THE STATE ex inf. McALLISTER, Attorney-General, ex rel. CHARLES D. COLE et al., v. NORBORNE LAND DRAINAGE DISTRICT COMPANY OF CARROLL COUNTY.

In Banc, October 10, 1921.

1. **QUO WARRANTO: How Far a Remedy.** The writ of *quo warranto* is usually employed for trying the title to a corporate franchise or to a corporate or public office; it is not primarily an action in the interest of an individual, but is intended to protect the public generally against the unlawful usurpation of franchises or offices; and is not in any sense a writ of correction or review.

2. ——: **Drainage District: Annulling Judgment Extending Boundaries.** A proceeding by *quo warranto*, brought in the Supreme Court by the Attorney-General, is not the remedy for annulling the judgment of the circuit court extending the boundaries of a drainage district to include the lands of the relators at whose instance the suit is instituted. The respondent being a corporation, the court is limited on *quo warranto* to determining by what right it wrongfully or illegally exercises certain franchises, or to ousting it from the right to be a corporation for an abuse or non-user of franchises granted, and cannot review the judgment of the circuit court extending the boundaries.

(91)

92    SUPREME COURT OF MISSOURI,

State ex inf. McAllister v. Norborne Land Drainage District Co.

3. ———: ———: ———: Jurisdiction: Errors.  Where the circuit court acquired jurisdiction, relators had an opportunity to be heard and all the requirements of Section 4 of the Circuit Court Drainage District Act of 1913 governing the matter of extension were complied with, mere erroneous findings of fact or errors of judgment will not afford sufficient ground for annulling by *quo warranto* the judgment extending the boundaries to include relators' lands; but in the absence of fraud, the judgment must be considered as conclusive.

4. ———: ———: Limited Right to Review.  The Circuit Court Drainage District Act of 1913 being special and independent of the civil code, and the right of an appeal to review the judgment of a circuit court relating to a drainage district being limited to the specific matters by it mentioned, the right to review the judgment of the circuit court extending the boundaries of a drainage district is likewise limited, and will not be extended to make the writ of *certiorari* or *quo warranto* available for that purpose.

## Quo Warranto.

WRIT QUASHED.

*Paul D. Kitt* and *Perry S. Rader* for informants.

(1) *Quo warranto* is a direct proceeding by the State and is available for nullifying the exercise of legislative power by a municipality, or by the legislative agent, in this case the circuit court.  Sec. 2066, R. S. 1919; Sec. 2631, R. S. 1909; State ex inf. Killam v. Colbert, 273 Mo. 198, 209; Black v. Early, 208 Mo. 308; State ex rel. v. Wilson, 216 Mo. 275; State ex rel. v. Gravel Road Co., 187 Mo. 446; State ex rel. Brown v. Westport, 108 Mo. 582; State ex rel. v. Westport, 116 Mo. 582; Lehigh P. & T. Co. v. Town of Lehigh, 156 Iowa, 387, 398.  (2)  To nullify the attempted extension of its corporate limits, the suit should be brought directly against the corporation.  23 Am. & Eng. Ency. Law, p. 622, b; City of East Dallas v. State ex rel. Putz, 73 Tex. 370; People v. Peoria, 166 Ill. 517; State ex rel. White v. Small, 131 Mo. App. 470; State ex inf. v. Fleming, 148 Mo. 9, 12; State ex inf. v. Fleming, 158 Mo. 567; State ex inf. Major v. Kansas City,

233 Mo. 171; State ex inf. v. Woods, 233 Mo. 382. (3) It has been ruled by this court that the extension, by the judgment or decree of a circuit court, of the boundary lines of a drainage district organized under the Act of 1913, is an exercise of legislative power by an administrative agent. State ex rel. Manion v. Dawson, 225 S. W. 97. (4) The judgment of the circuit court of August 12, 1918, extending the boundary lines of respondent drainage district so as to add relators' lands and other lands, being an exercise of legislative power by an administrative agent, was not *res adjudicata*. State ex inf. v. Fleming, 147 Mo. 2, 11; State ex rel. White v. Small, 131 Mo App. 470; State ex inf. v. Calbert, 273 Mo. 198; State ex rel. v. Wilson, 216 Mo. 215, 275; Kayser v. Trustees of Bremen, 16 Mo. 88; Woods v. Henry, 55 Mo. 560; State ex rel. v. McReynolds, 61 Mo. 203; State ex inf. v. Woods, 233 Mo. 357. (5) The Circuit Court of Carroll County, in rendering its decree extending the boundary lines of the drainage district, was not a court possessed of general common-law jurisdiction, but was an inferior court or tribunal, possessed of no power except what was expressly conferred upon it by statute, and all facts conferring upon it power to extend the boundaries must affirmatively appear upon the face of the proceedings. Zeibold v. Foster, 118 Mo. 349; Ry. Co. v. Campbell, 62 Mo. 585; State v. Metzger, 26 Mo. 65; Edmonston v. Kite, 43 Mo. 176; Schell v. Leland, 45 Mo. 289; Iba v. H. & St. J. Railroad, 45 Mo. 469; Haggard v. Att. & Pac. Railroad, 63 Mo. 302; Fisher v. Davis, 27 Mo. App. 321; State ex rel. v. St. Louis, 1 Mo. App. 503; Michael v. St. Louis, 112 Mo. 610; Cunningham v. Pac. Railroad, 61 Mo. 33; Jefferson Co. v. Cowan, 54 Mo. 234; Woods v. Boots, 60 Mo. 546. All jurisdictional facts must affirmatively appear upon the face of the proceedings and no presumptions are indulged as to matters not so appearing. State ex rel. v. Wilson, 216 Mo. 277; State ex inf. v. Woods, 233 Mo. 377; State ex rel. v. Page, 107 Mo. App. 213; State ex rel. v. Seibert, 97 Mo. App. 218. Furthermore,

"No court or officer can acquire jurisdiction by the mere assertion of it, or by falsely alleging the existence of facts on which jurisdiction depends." Ex parte O'Brien, 127 Mo. 489; People v. Cassels, 5 Hill (N. Y.) 164. While the Legislature itself might organize a drainage district composed of the whole state, as a police regulation for the promotion of the public health, etc., it cannot delegate to an administrative agent, such as a circuit court, such unrestricted power; it cannot delegate to such agent the vital power to capriciously say, as its opinion serves, to what places and in what territory the statute shall apply, but such agent has no power except such as is expressly and specifically given. Merchants Exchange v. Knott, 212 Mo. 616. (6) The statutes do not contemplate that a drainage district organized in 1899 and reorganized under the Act of 1913 in 1917 shall have power, after its reorganization, to extend its boundary lines to include other large tracts. They contemplate that it shall, after its reincorporation, be confined to the same territory embraced within its boundary lines at the time of its organization in 1899, and that for the construction of new drainage works or the enlargement of those then constructed it shall amend its plan for reclamation then adopted and levy taxes on the lands contained in the district then organized. Secs. 53 to 60, Laws 1913, pp. 263-266; Secs. 47 and 40, Laws 1913, p. 260; Secs. 16 and 37, Laws 1913, pp. 241, 254. (7) If said Section 40 authorizes the extension of the boundary lines of an existing drainage district so as to include other large tracts, and the conditions prescribed by Section 2 must be read into Section 40, then the petition filed by the board of supervisors to extend the boundaries will not authorize the circuit court to entertain it unless it shows on its face (1st) that the lands to be added, together with those already contained in the district, constitute one contiguous body, or drainage unit, of swamp, wet or overflowed lands, or lands subject to overflow, and (2nd) that the purpose of extending the boundaries is to reclaim the lands to be added from the effects of water either (a)

for agricultural or sanitary purposes and (b) to pro-
mote the public health, convenience or welfare, or (c)
to conserve some other public utility or benefit, and (3rd)
that the owners of a majority of the acres to be added
have consented to the extension, either by joining in the
petition or by filing their separate written consent.  State
ex inf. v. Woods, 233 Mo. 357; 32 Cyc. 1424.  (a)  All
jurisdictional facts must affirmatively appear upon the
face of the proceedings and no presumptions are indulged
as to matters not so appearing.  State ex rel. v. Wilson,
216 Mo. 277; State ex inf. v. Woods, 233 Mo. 377; State
ex rel. v. Page, 107 Mo. App. 213; State ex rel. v. Seibert,
97 Mo. App. 213; Ry. Co. v. Campbell, 62 Mo. 588; Ellis
Pac. Ry. Co., 51 Mo. 203; Ry. Co. v. Young, 96 Mo. 39;
Leslie v. St. Louis, 47 Mo. 474; Nishnabotna Drain. Dist.
v. Campbell, 154 Mo. 157.  (b)  The supervisors' petition
to extend did not show upon its face the affirmative
facts necessary to authorize the circuit court to entertain
it.  It did not show either (a) that the lands to be added
were a part of the contiguous body, or drainage unit, of
which the lands in the organized district was the other
part, or (b)  that the purpose of the extension was to
promote some public purpose or (c) that the owners of
a majority of the acres to be added, or the owners of any
of them, had consented to the extensions.  (c)  The
record clearly establishes that the owners of a majority
of the acres to be added had not consented to the exten-
sions.  (d)  By no fair construction can the words "con-
tiguous body" used in Section 2 of the Act of 1913 be
expanded to include relators' lands, or the two large
tracts in Carroll County, each eight to ten miles in length
and connected by the long narrow neck four or five miles
long and only a few hundred yards wide. . The annexa-
tion of those two tracts to the district affects relators'
property interests, for their lands added must be taxed
to pay for the construction of the drainage works for
those two widely separated tracts.  Ingersoll on Public
Corporations, pp. 151 et seq.;  Traux v. Pool, 46 Iowa,
256;  Elsberry Drain. Dist. v. Harris, 267 Mo. 153.  (e)

The word "adjacent" used in Section 9 of the Act of 1913, and in the notice prescribed by Section 40, means adjoining, next to, close to, in proximity to the boundary lines. It means the lands which the engineer's survey reveals should have been included in and described by the articles of association, but were omitted therefrom in a mistaken apprehension of just what lands constituted the "contiguous body" which Section 2 prescribes may be organized into a drainage district. It is only those lands that can be added by the extension of the boundary lines. The words "adjacent to" used in the notice prescribed by Section 40 refer back to and mean the same thing as the words "adjacent thereto" used in Section 9, and it is only the lands "adjacent to" the boundaries described in the articles of association that can be added by the extension of the boundaries. Relators' lands, three miles square, were not "adjacent to" the lands of the reorganized district. (8) In no event can the boundary lines of a drainage district be extended to include other great tracts, against the consent of the owners of the lands to be added, unless (a) the extension is necessary for the proper reclamation and efficient drainage of the lands contained in the district, and (b) the lands contained within the extensions will be benefited by the construction of the drainage works contemplated by the adopted plan for reclamation. Elsberry Drainage Dist. v. Harris, 267 Mo. 139; Myles Salt Co. v. Iberia Drain. Dist., 239 U. S. 485. (9) If Sec. 40 of the Act of 1913 is not a mere correction statute, and authorizes the circuit court, upon the petition of the supervisors alone, to extend the boundaries of an organized drainage district so as to include other large tracts of land, without the consent of the owners or any of them, then said Section 40 denies to the owners of the lands so added the immunities and privileges and the equal protection of the laws guaranteed to them by the Fourteenth Amendment of the Constitution of the United States, in that it divides a natural class, the owners of land in the same "contiguous body," into two subdivisions and administers the law in

one way for one subdivision and in another way to the other subdivision, in that Section 2 enables the owners of a majority of the acres in the body proposed to be organized into a drainage district to prevent its incor-, poration by the mere negative act of withholding their signatures from the articles of association, and Section 40 denies to the owners of a majority of the acres in the lands to be annexed the right to defeat the extension of it boundaries by refusing to consent thereto, and permits the extension against the written protest of the owners of all the lands within the proposed extended territory. State v. Thomas, 138 Mo. 95; State v. Walsh, 136 Mo. 400, 407; Cooley on Constitutional Law (6 Ed.) secs. 481, 483; State v. Julow, 129 Mo. 163, 176; Van Riper v. Parsons, 40 N. J. L. 1; State ex rel. v. Railroad, 195 Mo. 245; Gulf Ry. Co. v. Ellis, 165 U. S. 150; State v. Loomis, 115 Mo. 307; Barbier v. Connolly, 113 U. S. 31; State v. Haun, 61 Kan. 154; Ry. Co. v. Matthews, 174 U. S. 107; Southern Ry. Co. v. Greene, 216 U. S. 400, 412; Cotting v. K. C. Stock Yards Co., 183 U. S. 79; Connolly v. Union Sewer Pipe Co., 184 U. S. 556, 560; Ry. Co. v. Vosburg, 238 U. S. 56; Myles Salt Co. v. Iberia Drain. District, 239 U. S. 484; Minnesota v. Barber, 136 U. S. 313, 319. (10) The judgment of the circuit court of August 12, 1918, by which the boundary lines of respondent drainage district, containing 14,400 acres, was extended, upon the petition of the supervisors alone, to annex 23,952.42 other acres thereto, the lands so added including over 2800 acres of farm lands and 43 town lots belonging to relators, none of which had ever overflowed, and subjecting said lands to taxation to pay for drainage works already planned by supervisors in whose election the owners of the lands annexed have no voice, and done without the consent of any of them, and against the written protest of relators, was an arbitrary and unreasonble exercise of legislative power, was an abuse of the law, even if it permits the boundary of a drainage district to be extended to include other large tracts, and was oppres-

sive; and if said Section 40 permits such an extension it is so palpably unjust and oppressive as to be void. Heineman v. Sweat, 130 Ark. 70; Coffman v. St. Francis Drain. Dist., 83 Ark. 54; French v. Barber Asph. Pav. Co., 181 U. S. 324; Kelly v. Meeks, 87 Mo. 396; Corrigan v. Gates, 68 Mo. 544; Copeland v. St. Joseph, 126 Mo. 431; State ex inf. v. Kansas City, 233 Mo. 162; State ex rel. v. Mining Co., 262 Mo. 504; City of Plattsburg v. Riley, 42 Mo. App. 23; City of Cape Girardeau v. Riley, 72 Mo. 223; City of Tarkio v. Cook, 120 Mo. 9; Elsberry Drain. Dist. v. Harris, 267 Mo. 148; State ex rel. v. Birch, 186 Mo. 219; Commerce Trust Co. v. Blakely, 274 Mo. 52; State ex rel. v. Reynolds, 61 Mo. 203; City of Orlando v. Orlando W. & L. Co., 50 Fla. 207; 1 McQuillin on Municipal Corporations, secs. 267, 269; McCloskey v. State ex rel., 23 S. W. (Tex.) 518; St. Louis v. Pack. Co., 141 Mo. 376, 384; St. Louis v. Dorr, 145 Mo. 466; Hays v. Poplar Bluff, 263 Mo. 516; St. Louis v. Theatre Co., 202 Mo. 699. (a) Section 40 itself is palpably arbitrary. It fixed no limit to which the boundaries may be extended. It permits extensions to any extent without the consent of the owners of any of the lands to be added, and even against the written protest of all of them. It in effect requires the court to enter a decree extending the boundaries whenever a petition is filed and notice given, for it says that "the court shall . . . enter its decree according to its findings," and in no way indicates what "its findings" shall consist of. Gast Realty Co. v. Schneider Granite Co., 240 U. S. 58, 59; Myles Salt Co. v. Iberia Drain. Dist., 239 U. S. 478; Bowers v. Smith, 111 Mo. 65; State ex rel. v. Railroad, 105 Mo. App. 213; Hilgert v. Barber Asph. Pav. Co., 107 Mo. App. 393. (b) The extension of the boundaries of respondent drainage district, containing 14,400 acres, to include 23,952.42 other acres, even though the statute invested the court with power to add other large tracts, was a flagrant abuse of the power invested in the circuit court, and was totally at variance with the spirit of fairness that pervades all other sections of the Act of 1913.

Branson v. Bush, 251 U. S. 190; Lancaster v. Police Jury, 254 Fed. 189, 190; Wright v. Police Jury, 264 Fed. 712. (c)   This court has the undoubted right to determine whether the decree extending the boundaries was a reasonable exercise of the administrative power of the circuit court.   American Tob. Co. v. St. Louis, 274 Mo. 375 (Syl. 5), 477, 526; Union Cemetery Assn. v. Kansas City, 252 Mo. 466, 499.   (d)   And oppressive or unreasonable exercise of administrative power will be annulled by *quo warranto*, which is a direct attack on the order or decree by which it is done.   McGhee v. Walsh, 249 Mo. 268 (Syl. 10), 286, 289; State ex inf. Jones v. Light & Devel. Co., 246 Mo. 618; Skinker v. Heman, 148 Mo. 255; Cooley on Taxation (3 Ed.), pp. 1256-1258.   (e)   A comparison of Section 40 with other statutes shows that it has always been the policy of the Legislature to make the extension of the corporate limits of a municipal or quasi-municipal corporation dependent, either upon the consent of the owners of the lands to be added, or of the qualified voters within the corporate limits of the public corporation whose corporate limits are to be extended to annex other lands; and that Section 40 is totally out of harmony with the long expressed policy of the State as evidenced by many statutes.   Secs. 4467, 4698, 7973, 8894, R. S. 1919; Mo. Const. Art. 9, sec. 16; Secs. 8207, 8375, 8398, R. S. 1919; Mo. Const. Art. 9, sec. 3; Secs. 10832, 11199, 11210, 11252, 11254, R. S. 1919; Barber Asph. Pav. Co. v. Meservey, 103 Mo. App. 194; Southwest Mo. Light Co. v. Scheurich, 174 Mo. 242; Ex parte Conrades, 185 Mo. 423; State v. Bengsch, 170 Mo. 108.   (11)   Section 40 of the Act of 1913, Laws 1913, page 254, under which alone the boundary lines of any drainage district can be extended to include lands not described by and included in the articles of association and decree of the court incorporating the district, is a mere correction statute, designed and intended to provide means and methods for correcting errors in the decree incorporating the district, by extending its boundaries to include lands which ought to

have been described in the articles and in the decree, but were erroneously or inadvertently omitted therefrom; and does not authorize the circuit court to extend the boundaries to include other great tracts. If said Section 40 is a correction statute, in the sense stated, then the judgment of August 12, 1918, extending, the boundaries of the Norborne Drainage District to include 23,952.42 acres, including the lands of relators, was void because of a lack of legislative authority in the court to render it. That Section 40 is a mere correction statute, designed to give the circuit court power to correct mistakes in the preceding proceedings, and was not meant to empower the court to increase an organized district to three times its organized size, is made manifest by many considerations, thus: (a) By a careful study of the section as a whole and the words used therein. The first thirteen lines of the section express judicial powers, and only the next three are used to express the legislative powers, which is a power rarely committed to circuit courts, and if the words used to express it really mean to vest the court with power to annex great tracts of land they become the most important words of the section and overshadow everything else in it. (b) Down to the last semicolon in the section it is clearly and unmistakably a correction statute. From that point on the quotation reads: "Or said petition may ask that the boundary lines be extended so as to include lands not described by and included in the articles of association and decree of the court incorporating the district." This sentence, taken in connection with what precedes, reads like a parenthetical or explanatory clause, indicating that the power "to amend its former decree" is to be considered as embracing corrections in the boundary lines; yet if anywhere in the entire act the court is given power to extend the boundaries so as to include other great bodies of land it is to be found in that one sentence. It says "said petition." What petition is meant? The only petition previously mentioned is one that may be filed by the board of supervisors, or "owners of land

adjacent to the district.'' Either the board or adjacent owners may file a petition to extend the boundaries. The words apply alike to both. There is no difference. Does this language mean that the boundary lines can be extended to include other large tracts, upon the petition of ''owners of land adjacent to the district'' alone? To so hold would be a startling interpretation of the statute. If the power is given to extend beyond mere corrections of mistakes, then the section authorizes the court, upon the petition of owners of lands adjacent to one side of the district, to have its boundaries extended to include large bodies of land adjacent to the other side of the district. And that can be done without including their own lands. In fact, the lands to be included are not required to be ''adjacent'' to the district at all; it only requires the petitioners to be adjacent owners or supervisors. Any lands not described in the decree can be included, even though they lie in another part of the State. Could the other owners of land in Ray County adjoining the western boundary of the organized district alone have filed a petition asking the court to extend the boundaries eastward from the east side of the district eighteen or twenty miles, to include 20,000 acres in Carroll County, and the court upon their petition alone have extended the boundaries eastward so as to embrace those 20,000 acres? If it authorizes the court to extend the boundaries eastward to include 20,000 acres in Carroll County upon the petition of the board alone, it would have authorized the court to extend them eastward so as to include those same lands if a petition therefor had been presented by ''owners of land adjacent to such district.'' (c) But the subsequent words of the statute do not apply alike to the board and adjacent owners. If the ''owners of' lands adjacent to such district'' whether on the west side or east side of the district, had filed their petition to extend the boundaries to annex other lands to the district, whether their own lands or other lands, or whether adjacent to the district or far removed from it, notice is not required to be given to the supervisors, nor

are the supervisors given the right to file objections, or to be heard. (d) The section does not say the lands to be added are to be lands adjacent or contiguous to the district; it mentions "lands not described by or included in the articles of association and the decree of the court incorporating the district" as those that may be added. Any lands anywhere in the State can be added, if any large tract can be. The word "adjacent" only applies to owners who may file a petition; "owners of land adjacent to such district" may file a petition to extend the boundaries, but they may ask that any lands not already included in the district may be added. This much is clear if the section empowers the court to annex any large tract. (e) But the section proceeds to require notice to be given, and specifies to whom the notice shall be given. It says that notice shall.be given "to the owners and all persons interested in the lands, corporate and other property in and adjacent to——drainage district." The board of supervisors is not mentioned. If a petition to extend the boundaries is filed by owners of adjacent lands, notice must be given, but the board of supervisors is not among those to be notified; the notice is to "owners and all persons interested in the lands in or adjacent to" the district. The last three lines of the page (254) give to owners of land within or without the district, the right to file objections; but no such right is given to the board of supervisors. (f) There is another word in this required notice which indicates that the extension was not to include large tracts of land. It is the word "adjacent." The section requires that notice be given "to the owners and all persons interested" in lands in or "adjacent to" the drainage district as organized. The word "adjacent" does not mean lands three or four miles distant from the district. It does not mean two large tracts of land—one extending eight or nine miles eastward from the eastern boundaries of the district, and the other beginning twelve or fourteen miles east of the eastern boundary and extending on eastward nine or ten miles, the two connected

by a narrow strip or neck only a few hundred yards wide and four or five miles long—as is shown by the map (Exhibit D) in this case. It would be to stretch the word "adjacent" clear beyond all reasonable interpretation to give to it any such expanded meaning. The word as here used means adjoining. The lands which have been erroneously left outside the boundaries in drawing the articles and decree would be "adjacent" to the district, and they are the only lands meant by this word, and it was only the owners of those lands and the lands "in" the district that were to take notice of the petition. The word "adjacent" as there used is one of limitation and restriction, not of expansion. If in outlining the boundaries of the district in the articles and decree a tract was erroneously omitted, such tract would be "adjacent to" the district, and it is in that sense the word "adjacent" is used, and to give the word that interpretation is to make it entirely consistent with everything in the section that precedes or follows it. (g) All these provisions are consistent with proceedings to correct errors in the descriptions of the lands embraced in the district, the names of their owners and a mistaken boundary, and with amendments in the Plan for Reclamation, but they are not consistent with an intended purpose to give the court power to extend the boundaries to include other great tracts If this section was meant to confer that great power, the one sentence that confers it becomes the most inportant part of the whole section, pregnant with power, liable to be abused and arbitrarily used, so shuttled into the belly of the section as to suggest concealment. (h) If Section 40 confers on the circuit court the legislative power to extend the boundaries so as to add other large tracts, it is conferred by the one sentence: "or said petition may ask that the boundary lines of said district be extended so as to include lands not described by and included in the articles of association and decree of the court incorporating the district." If those words authorize one large extension, they would authorize any number of extensions; if they mean that the court can extend

the boundary lines of the Norborne Drainage District of 14,400 acres so as to add 23,952.42 other acres, they mean that it can, by successive extensions, extend the boundaries eastward to the mouth of the Missouri River and northward to Iowa, and westward to Kansas, including uphill and bottom lands, prairies and river valleys; for none of such lands would be those "described by or included in the articles of association and decree of the court incorporating the district," and this section does not confine the extensions to "swamp, wet or overflowed lands or lands subject to overflow," or use any of those words. If this section is really an extension statute, vesting the circuit court with unrestrictive legislative power unless its exercise can be reviewed by *quo warranto,* there is no reason why the court could not, upon the petition of the supervisors or the owners of adjacent land, extend the boundaries of the Norborne Drainage District to include the whole State of Missouri. And yet that is the absurdity to which we are brought, unless this statute is held to be a mere correction statute, authorizing the court, among other things, to so extend the boundary lines as to include in the district lands which were inadvertently or improperly omitted from the articles and decree. (i) Section 40 on its face contains other words which indicate that it is a correction statute, and not one to annex large bodies of land to an existing district. It says that its purpose is to make "proposed changes, amendments and corrections." At the bottom of the page (254) it says that, after notice given, any owner of land within or without the district, which "will be affected by the proposed changes, amendments and corrections, enumerated in the petition," may file objections. The "petition" referred to is the petition of the board of supervisors or of adjacent landowners authorized further up in the section. It is objections to "proposed changes, amendments and corrections enumerated in the petition" that may be filed. There is nothing in those words to indicate that the petition could ask that immense tracts of land be added to the district; they indicate the

exact contrary. When read with the one sentence further up stating that the "petition may ask that the boundary lines of said district be extended so as to include lands not described" in the decree, they mean that "changes, amendments and corrections" may be made in the boundary lines so as to "include lands" erroneously omitted. (j) All the foregoing reasons for the conclusion that Section 40 is a mere correction statute are reenforced when said section is compared with other sections of the act. To get the meaning of one section of an act it is necessary to read it and other sections together. Section 40 and the other sections of the act are entirely consistent, if Section 40 is held to be a mere correction statute, but radically inconsistent if it is ruled to empower the court to extend the boundaries to include other large tracts of land. (k) The Act of 1913 would have been incomplete without a correction section. A reading of Sections 9, 19, 12, 13 and 14, makes it clear that the board of supervisors having adopted a "plan for reclamation," cannot change it. Section 14 says that "the commissioners shall have no power to change the plan for reclamation heretofore adopted," and the other sections make it clear that neither the supervisors nor the engineer, nor anyone else, except the circuit court, can change it, and the court can do so only on the petition of the board of supervisors or the "owners of land adjacent to such district." And yet, in the very nature of things, as the construction of the drainage works progresses, more feasible routes may be revealed, more efficient levees or drains may become manifest, more practicable methods of construction may unfold, and hence the court should have power to change or amend the plan, and Section 40 is the only section that provides for such changes. In drawing the articles of association and decree incorporating the district mistakes are sure to occur. It is easy, for instance, to make the boundary line turn at a quarter section corner instead of the half section corner, and yet that one little mistake, if not corrected, omits a forty acres and frees it from taxation, however great may be the benefit to it of the drainage works. Hundreds of mistakes may occur in

drawing the articles and decree and the plan for reclamation, and it was that all such "errors, omissions or other mistakes" might be corrected that Section 40 was enacted, and it was intended to have no other meaning. (1) Section 45 provides that any two or more drainage districts may be united and consolidated, whenever the owners of a majority of the acres in each, at separate elections, shall vote to consolidate, and shall present a petition, showing such facts, to the circuit court. The evident purpose of that section is to permit the owners of land in two adjacent drainage units, which after their organization into separate districts are found to constitute in fact one contiguous body of swamp or wet lands, to unite them into one, since the same ditches that will drain the lands of the one will also drain the lands of the other, and by uniting and sharing the costs of the construction more efficient drainage works for both can be constructed and at less costs to the landowners. The section was meant to meet such a situation as this case presents. It was meant to treat all owners of land alike. In view of that section there is no need to interpret Section 40 to mean that the boundaries may be extended to include other great tracts upon the petition of the supervisors alone or the adjacent owners alone. Furthermore, the provision of Section 45 requiring the owners of a majority of the acres in both of two organized districts to consent to the consolidation, is out of harmony with an interpretation of the words of Section 40 to authorize an extension to include a tract as large as either of them, upon the petition of the supervisors alone, and against the wishes of all the landowners. That section also provides for the election of a "new board of supervisors" after the consolidation is effected, but neither under Section 40 nor any other section of the act is a new board of supervisors to be elected, however great is the tract annexed, and the owners of the lands added have no voice in the election of the supervisors until their five-year terms expire, one each year. Section 40, if anything more than a correction statute, vests the court with

arbitrary powers; Section 45 regards the right of the landowners, and is fair.   Section 45 makes the power of the court to consolidate two or more districts absolutely dependent upon the affirmative vote of the owners of the majority of the acres in each district affected; Section 40 permits the court to extend the boundaries against the protest of every owner of land in the proposed extension.   Section 45 gives to the owners of the consolidated district a right to choose new supervisors to plan and construct the drainage work; Section 40 gives to the owners of the lands added by the extensions no voice in choosing the supervisors who are to construct the drainage works, make the contracts, employ the engineer and determine the costs, but requires them to submit to the domination of supervisors who have been elected by the owners of one-half as many acres as they themselves own. The only way to harmonize the two sections is to rule that Section 40 is only a correction statute, and does not authorize the extension of the boundaries to include other great bodies of land; if that is done, Section 40 will breathe the same spirit of fairness that animates Section 45 and every other section of the act.   (m) Section 2 provides that a drainage district cannot be organized until articles of association and petition are signed by the owners of a majority of the acres in the contiguous body.   Section 53 contains a like provision in reference to the reorganization of an existing district. It says that "the owners of a majority of acreage of any existing drainage district" must sign the articles of association for its reorganization.   These sections manifest a legislative intent that the organization of a drainage district and the reorganization of an existing district is made to depend upon the consent of the owners of a majority of the acres of which either is to be composed. Surely the Legislature never intended, in the same act, to give to one set of landowners a privilege denied to other landowners similarly situated; surely it never meant that the owners of a majority of 14,400 acres could prevent the organization of a drainage district, by the

mere negative act of withholding their signatures, while all the owners of the whole of 23,952.42 acres could not prevent the annexation of all those lands to an organized district one-half so large, by the affirmative act of filing objections to the extensions. The very fact that Section 40 says nothing about the consent of the owners of the lands to be added should compel the interpretation that it is a mere correction statute, and was never intended to confer the power to extend the boundaries to include other large tracts. (n) The vesting of legislative power in circuit courts is new. It has rarely been attempted in this State. The courts of most states have frowned upon the attempt, and some of them have declared it prohibited by constitutional provisions similar to Article III of our Constitution, which says that the legislative, executive and judicial powers shall each be "confined to a separate magistracy, and no person or collection of persons, charged with the exercise of powers properly belonging to one of those departments, shall exercise any power properly belonging to either of the others, except in the instances in this Constitution expressly directed and permtted;" and there is no provision directing or permitting the Legislature to authorize the vesting of the legislative power of extending the boundaries of a drainage district in circuit courts. Therefore, it should not be held that the Legislature intended by Section 40 to vest the circuit court with the unrestricted and unlimited legislative power, upon conditions fixed by itself, to extend the boundary lines of a drainage district. To do so would be to render Section 40 absolutely void, as in conflict with said Article III of the Constitution. Section 40 can be construed to be valid, if it is held to be a mere correction statute, otherwise it is not valid. See State ex inf. v. Colbert, 273 Mo. 216. (o) The fact that said Section 40 nowhere makes mention of the consent of the landowners whose lands are to be added is a potent reason for holding said section to be a mere correction statute. If said Section 40 authorizes the circuit court to extend the boundaries to include other large tracts, even

tracts twice as large as the tract embraced in the district organized, it empowers it to make the extension though the owner of every acre added filed a written protest. The fact that such owners are given a right by the section to file written objections and the court is required to hear their objections does not alter the case, for the section does not say that their objections shall avail anything, and this court held in State ex rel. Manion v. Dawson, 225 S. W. 97, that the court does not act judicially in ruling on the objections; the court may extend the boundary lines whatever may be the objection, and extend them though the owner of every acre may formally object, and extend the boundaries according to its own whims and caprice, for the section says that "the court shall . . . enter its decree according to its findings," without prescribing what those findings shall include. To permit the boundaries to be extended to include other great tracts without the consent of the owners of a majority of the acres to be added is to bring that section into sharp conflict with the spirit of Section 2 of the act, which permits a drainage district to be organized only when the owners of a majority of the acres of the contiguous body sign the articles of association, and with the spirit of Section 45 (p. 259), which permits two organized districts to unite and consolidate only when the owners of a majority of the acres in both districts vote for consolidation. It is also to bring it into conflict with the spirit of every other statute pertaining to the extension of the corporate limits of a municipal or quasi-municipal corporation. (p) A drainage district is not organized to promote the public health or welfare; those pretended public purposes are only colorable. It is organized to enhance the value of lands for agricultural purposes on the theory that if they are drained and protected from overflow waters their productivity will be increased. It is a taxing corporation, pure and simple. The taxes it is authorized to levy have no maximum limit, and they are in practice higher than any other kind of taxes known in this State—higher than sewer taxes, or special road district taxes, and far .

higher than school or county taxes. And yet this Section 40 authorizes the board of supervisors, without consulting any one, to lay out the boundaries of proposed extensions of an organized district, according to their caprices and their *ex parte* judgments, and go into court and have all the lands within the proposed boundary lines added to this taxing corporation, without the consent of the owners or any of them, and subject them to enormous taxes, to construct drainage works of their own devising, of any dimensions and character they may have decided upon. The owners of the lands added will have no voice in choosing any of these supervisors or the engineer, until after the location and dimensions of the drainage works are determined, the contract let, the bonds issued, and the amount of the installment tax to be paid each year through all the years until the bonds have been paid has been fixed. Surely the court will frown upon a statute so totally out of harmony with the policy of the State declared through many years by many statutes on kindred subjects, and will not rule at all that it was intended to be an extension statute, but was intended to be only a correction statute. (q) If Section 40 authorizes the circuit court to extend the boundaries of a drainage district to include other large tracts, then it authorizes the court, a mere administrative agent vested with legislative power, "to capriciously say to what places and in what territory the statute shall apply." It authorizes one circuit judge to say when the boundaries shall be extended, and another to deny extension when the same circumstances exist; it authorizes the court to fix its own terms upon which extension shall be granted, to determine the number of acres that shall be annexed, and what lands shall be excluded, without any prescriptions from the Legislature; it, indeed, gives to this administrative agent "the power to bind and loose." The Legislature ought not to be charged with such an absurdity, if by any reasonable construction the statute can be given a different interpretation. If Section 40 is construed to be a mere correction statute, authorizing the court, upon

the petition of the board of supervisors, or the owners of land adjacent to the district, to correct errors, omissions or mistakes in the plan for reclamation or the decree incorporating the district, by changing the boundaries so as to include lands which were not, but should have been, described in the decree, it is freed from such absurdity and arbitrary capriciousness.   (r) Section 40 being a mere correction statute, how far may the boundaries be extended in a proceeding in court to correct errors? The statutes themselves answer the question. All the other sections of the Act of 1913, wherever relevant, must be read in order to ascertain the meaning of the few words in Section 40 relating to a petition to extend the boundary lines, and if the words of Sections 2, 9, 10, 13 and 40 are considered together a definite answer may be found to this question. Section 2 permits the organization into a drainage district of a contiguous body of swamp, wet or overflowed lands, or lands subject to overflow. No other lands, except such as form a part of the "contiguous body," can be included in the district when it is organized, and consequently no others can be added by a subsequent extension of its boundaries. But what lands constitute the "contiguous body," or drainage unit? That is not always an easy question to answer with exactness by unscientific men. The lands supposed to lie in the drainage unit are required to be described and their owners named, and the boundary lines must be stated, in the articles of association. Presumably the articles are drawn by a lawyer, and the outline of the district is given to him by some enterprising persons who are the moving spirits in the new enterprise. Neither he nor they are surveyors. The statute does not require a survey, or a topographic chart, showing elevations and depressions, to be made before the articles are drawn, signed or filed. Without such survey or chart, it is often impossible to determine with exactness just what lands constitute the drainage unit, or will be benefited by drainage. Presumably, all parties interested will include within the boundaries of the proposed district, as stated in the articles, all the lands which make up the contiguous body, but

some lands really a part of it may by mistake, because of an erroneous view of their altitude, be omitted or included. Under Section 4, the owner of any tract erroneously included has a right to object to the inclusion of his land in the district, but the owner of any tract erroneously omitted has no right to object to its omission. Under said Section 4 the court may exclude any tract erroneously described in the articles, and then organize the district; and under Section 5 the circuit clerk gives notice to the landowners whose lands have been included in the district to meet and elect supervisors; and under Section 9 the supervisors are required to appoint a competent civil engineer. Section 9 requires this civil engineer to make "all necessary surveys of the lands within the boundary lines of said district, as described by the articles of association, and of all lands adjacent thereto that may or will be improved or reclaimed in part or in whole by any system of drainage that may be outlined and adopted," and he is required to make maps and profiles, and to draw up a plan for reclamation "for drainage, leveeing and reclaiming the lands described in the articles or adjacent thereto." Here the words "adjacent thereto" appear for the first time in the act. Here for the first time is a requirement for a survey and maps and profiles. The engineer, in making the surveys and profiles, showing the elevation of the various tracts, has discovered some lands adjacent to the district which will be reclaimed, in whole or in part, by any system of drainage that may be outlined for draining the lands contained in the district. Section 10 restricts the board of supervisors to the adoption of a plan for reclamation that will reclaim the lands "contained in the district organized." But the reclamation of the lands contained in the district organized, according to any plan that "may be outlined and adopted," will also reclaim some lands "adjacent" to the district. In other words, the engineer, by his survey, scientifically and accurately made, has discovered some tract or tracts lying alongside of the district, that are a part of the "contiguous body," that were not de-

scribed in the articles, or included within the boundaries stated therein, but were, as shown by his survey, erroneously omitted therefrom, but should have been included therein, because by any feasible plan for reclamation he can outline they will be benefited by the construction of the drainage works called for by it. Being benefited, they ought to be added, and made to bear their share of the costs of the drainage works which will reclaim them. But he cannot add them, neither can the supervisors. He is required by Section 9 to make a report to the board of supervisors of the lands adjacent to the district omitted from the articles and not included within the boundaries, that will be benefited by any system of drainage or levees that may be outlined and adopted. He is not given liberty to survey or report just any adjacent tract that he conceives will be improved or reclaimed in whole or in part. It is only such adjacent tracts as will necessarily be improved or reclaimed. That is the meaning of the words requiring him to survey all lands adjacent to the boundary lines that may or will be improved or reclaimed ''by any system of drainage or levees that may be outlined and adopted.'' Those are words of restriction. They mean that he must prepare a plan for draining, leveeing and reclaiming ''the lands contained in the district organized;'' that is his primary concern; his duty is to outline a plan for draining the lands in the district for which he has been appointed and for which the supervisors are empowered to act; if in drawing his plan for draining, leveeing and reclaiming them, he discovers that other neighboring lands will necessarily be benefited by the construction of the drainage works called for by his plan, he must survey and make report of such lands. But at that stage of the proceedings the supervisors can do nothing in regard to adding such lands. They are required by Section 10 to adopt a plan for reclaiming ''the lands contained in the district organized,'' and by Section 12 to file a certified copy of it with the circuit clerk and to go ahead and secure the appointment of commissioners to assess bene-

290 Mo.—8

fits and damages, but when these commissioners meet to begin their work the secretary of the board of supervisors (Section 13) must furnish to them not only a list of the lands described in the articles of association, but a list of those ''adjacent thereto that will be affected by carrying out and putting into force the plan for reclamaion.'' The statute does not say that the commissioners are to assess these ''adjacent'' lands with benefits, or to even estimate how much the proposed drainage works will benefit them, but presumably they are to consider the fact that they will be benefited, or else there would be no use in the secretary furnishing them a list of such lands. But Section 14 says that ''the commissioners shall have no power to change the plan for reclamation'' theretofore adopted. They can assess damages for lands within or without the district that will by the plan be acquired for rights of way for ditches and levees, but they can assess benefits only against lands contained in the district as outlined in the decree of the court (Sec. 12). What then is to be done concerning these adjacent lands that will necessarily be benefited in whole or in part by the construction of the drainage works outlined in the adopted plan? Are they to escape taxation altogether? They were erroneously omitted from the articles of association and from the decree of incorporation; is there no remedy? Must the owners of the lands ''contained in the district organized'' pay the entire costs of reclaiming those adjacent lands? There is a tract adjoining the district which needs draining, which is a part of the contiguous body, which was not included within the boundaries as outlined in the articles, whose owner wishes to have it reclaimed, and wishes it to be added to the district in order that it may be reclaimed; is he not to have the right to have it reclaimed? When the articles were drawn and filed and the signers made application to the court for incorporation, he was given no right (Section 4) to object that his lands were not included; he could not then, or any time before the commissioners' report was confirmed according to Section 16, have filed an

application that the boundaries be modified so as to include his lands, for the statute makes no provision for such application. His lands must be included, or forever be deprived of proper drainage, for they are a part of the contiguous body, and were erroneously omitted from the articles. Is he forever to be deprived of the right to have them included in the district and properly drained? Up to this stage of the proceedings there is no provision for bringing in any tract "adjacent" to the boundary line of the district as outlined in the articles and decree of incorporation. Section 14 not only provides that "the commissioners shall have no power to change the plan for reclamation," but it requires them to make a tabulated report of their assessments and an estimate of "the cost of works set out in the plan for reclamation," and file their report with the circuit clerk, and the said clerk is required to give notice to all persons interested in the lands "included within the district" (and to them only) that the report has been filed and that they may file exceptions thereto. Section 16 requires the court to hear any exceptions filed, and "if it appears to the satisfaction of the court, after having heard and determined all of said exceptions, that the estimated cost of constructing the improvement contemplated in the plan for reclamation is less than the benefits assessed against the land and other property in said district, then the court shall approve and confirm said commissioners' report as so modified and amended." Section 37 provides that if the court shall find that the estimated costs exceeded the estimated benefits "the court shall enter its decree, declaring the incorporation of the district to be dissolved." Up to this stage of the proceedings not one word is said in the entire act concerning any change or amendment in the plan for reclamation, and not one word is said concerning the bringing into the district of any tract "adjacent" to the district which the engineer's survey shows will be benefited if the drainage works are construed according to his adopted plan. No provision is made for an objection by the board of supervisors that an adjacent

116     SUPREME COURT OF MISSOURI,

State ex inf. McAllister v. Norborne Land Drainage District Co.

tract will be benefited and should be added to the district. No provision is made that the owner of said adjacent tract may object that his tract was erroneously omitted and should be annexed to the district. The statutes are built on the theory that it must be made manifest by the commissioners' report that the benefits assessed exceed the estimated costs, and that the district has a right to a continued existence, before any such "adjacent" tract can be added to the district. But if the district is to have a continued existence those tracts "adjacent thereto" that will be benefited by the drainage works called for by the adopted plan should be brought in and annexed to the district. What is to be done? It is just at this point that Section 40 comes in. It says that the board of supervisors, or the owners of land adjacent to the district, may file a petition in the circuit court, asking "that the boundary lines of said district be extended so as to include lands not described by and included in the articles of association and decree of the court incorporating the district." The language affords the supervisors, "for and in behalf of any drainage district organized under the provisions of this act," to have the boundaries extended to include any lands of the "contiguous body" adjacent to "the boundary lines of said district, as described in the articles of association," which the engineer, by his surveys and profiles, ascertained would "be improved or reclaimed in part or in whole by any system of drainage that may be outlined and adopted," but which the men who drew the articles, not being scientific men, erroneously omitted from the articles. It also affords the owner of land adjacent to the district and a part of the contiguous body, which ought to have been included in the articles but was not, to have the lines extended to include his land and to have it drained and reclaimed. Section 40 means that it is only those lands mentioned in Section 9 as "adjacent thereto," that is, as adjacent to "the boundary lines, as described in the articles of association," that will be reclaimed in part or in whole by the extension of the boundaries, that can be

added by such extension. This is our understanding of what is meant by the language of Section 40 quoted above, and such meaning is reenforced by the frequent use in said section of the words "errors," "omissions," "mistakes," "amendments," "corrections," and by the words of the notice required by said section requiring notice to be given only to "all persons interested in the lands in and adjacent to" the district; and we understand that this is the meaning of the opinion in Squaw Creek Drainage District v. Turney, 235 Mo. 80. And the words "adjacent thereto" cannot be expanded to include large tracts of lands far removed from "the boundary lines as described in the articles of association;" and we understand this to be the meaning of the opinion in Elsberry Drainage District v. Harris, 267 Mo. 139, written by the same able commissioner who wrote the opinion in the Turney case.

*S. J. & G. C. Jones, Conkling & Withers* and *Franken & Timmons* for respondent.

(1) *Quo warranto* will not lie to test the validity of the extension of the boundaries of a drainage district under the Circuit Court Drainage Act of 1913 for the following reasons: (a) Said act is a code complete within itself and both the extent and mode of appellate review provided for therein are exclusive. Laws 1913, pp. 232 to 267; Drainage District v. Ackley, 270 Mo. 173; In re Birmingham Drain. Dist., 274 Mo. l. c. 173; Pemiscot County v. McCarty, 276 Mo. 537; Elsberry Drain. Dist. v. Meyer, 277 Mo. 439. (b) The mode of appellate review being limited by the Legislature, *quo warranto* will not lie. 32 Cyc. 1417; State ex inf. v. A. T. & S. F. Railway Co., 176 Mo. 687, 715. (2) Even if *quo warranto* did lie to review the action of the circuit court in extending the boundary line of respondent drainage district nothing will be reviewed except the record proper. No mere irregularity nor any erroneous finding of facts can be reviewed, because such were tried and determined

at the time of the extension of the boundaries of respondent drainage district by the circuit court. The court will not re-examine into the character of relators' land, nor whether it will be benefited by the proposed improvements, nor whether the land of relators, together with other land taken into and originally in the district, constitute a contiguous body of wet, swamp or overflow lands or lands subject to overflow, nor will the court determine whether the extension of the boundaries of the drainage district was reasonable because all these matters were tried and determined by the circuit court at the time the boundary line of respondent drainage district was extended. Elsberry Drain. Dist. v. Harris, 267 Mo. 150; State ex inf. v. Fleming, 158 Mo. 567; State ex rel. v. Job, 205 Mo. 32; People v. Waite, 214 Ill. 421; People v. Mineral Marsh Drain. Dist., 193 Ill. 428; State ex rel. v. Hackman, 275 Mo. 646. (3) If the Drainage Act of 1913 had not provided for a trial of the issues involved in the extension of the boundaries of respondent drainage district over relator's land, still this court would only review the matter far enough to determine whether there had been a use and not an abuse of power. These matters having been tried and determined by the circuit court there is nothing to review. Heman v. Schulte, 166 Mo. 409; Land Imp. Co. v. St. Louis, 257 Mo. 291; McGhee v. Walsh, 249 Mo. 266; State ex inf. v. Fleming, 158 Mo. 562. (4) A drainage district re-organized under the Circuit Court Drainage Act of 1913 is expressly given the same power to extend its boundaries as a district organized under said act. Laws 1913, p. 263, sec. 53. (5) Sections 2 and 40 of said Act of 1913 are not in pari materia. Each deals with an entirely different subject and each has a procedure of its own. The requirements of Section 40 relative to procedure in the extension of boundaries are complete and exclusive. State ex rel. v. Rolwing, 269 Mo. 171; State ex rel. v. Sweaney, 270 Mo. 692; State ex rel. v. Taylor, 224 Mo. 393; 36 Cyc. 1147. (6) Relators contention that Sections 2 and 40 of the Act of 1913, considered together, mean that the boundary lines

of a district cannot be extended to include other large tracts of land except upon a petition of the owners of a majority of the acres added thereto, would result in Section 2 repealing Section 40, in as much as Section 40 says that either the board of supervisors of the drainage district or the owners of adjacent lands may petition. This shows conclusively that the sections are not *in pari materia* in regard to procedure. Section 40 is complete and exclusive. Drain. Dist. v. Turney, 235 Mo. 80; State ex rel. v. Sweaney, 270 Mo. 692. (7) The petition for extension of boundaries alleges all of the facts necessary to confer jurisdiction upon the circuit court. It alleges the use to be public, that the lands to be added are adjacent to the district and are wet, swamp, and overflowed lands and lands subject to overflow, and contains a description of the boundary line of the district as same is proposed to be extended showing that all of the lands contained therein are contiguous. This goes much farther than the statute requires. (8) Relators contend that the petition did not confer jurisdiction upon the court because it did not contain an allegation that the taking of the land into the district was for a public purpose. We reply: First, Section 40 makes no such requirement and hence such is unnecessary. State ex rel. v. Taylor, 224 Mo. 393; Little River Drain. Dist. v. Railroad, 236 Mo. 106; Drain. Dist. v. Wilkins, 93 Neb. 567; Drain. Dist. No. 1. v. Bates County, 216 S. W. 949, 951. Second, the petition shows on its face that it is to reclaim swamp and overflow lands from the evil effects of water for sanitary and agricultural purposes and the court will take judicial notice of the fact that this is a public purpose. Morrison v. Morey, 146 Mo. 543; Grand River Drain. Dist. v. Mosley, 220 S. W. 886. Furthermore, the whole record shows the use public. This is sufficient. Tel. Co. v. Railroad, 202 Mo. 1. c. 681. (9) At the time of the filing of the petition for the extension of the boundaries, the Norborne District was eighteen years old, having been organized in 1899. Surely it had lived long enough and carried out its purpose well enough to be entitled to be re-organized and petition

120     SUPREME COURT OF MISSOURI,

State ex inf. McAllister v. Norborne Land Drainage District Co.

for an extension of boundaries. It was a public cor-
poration (Section 4, Act of 1913) with a board of super-
visors (Section 5), with power to contract (Sections 9
and 27), and to levy taxes (Section 11), and was not
subject to dissolution even by decree of court under
Section 37 of said act, because it had already had the
judgment of a court that its benefits would exceed its
costs and its works had been constructed and been in
use long prior to the year 1917. No reason exists why
the Legislature could not grant to such a district the
power to extend its boundaries. Houck v. Little River
Drain. Dist., 248 Mo. 373; Houck v. Little River Drain.
Dist., 239 U. S. 254. (10) The petition for extension
of boundaries alleges that the lands of relators and
other lands were wet, swamp and overflowed lands and
would be benefited by being included within the bound-
aries of the district and that the ditches and levees of
the district enhance their value for agricultural purposes
and improve their sanitary condition. The decree ex-
tending said boundaries expressly finds that it was
necessary for the proper reclamation of the lands al-
ready in the district to take in the lands of relators
and other lands. While the statute does not require
the petition or decree to allege and find these matters,
we mention it only because relators state that such al-
legations and findings are absent. (11) Section 40 of
said Act of 1913 is not a mere "correction" statute. It
states in plain words that a petition may be filed to
extend the boundaries of a district. If all of the lands
that could ever be benefited by a drainage project must
be included within the original boundaries of the district,
then this provision of Section 40 is meaningless. Sec.
40, Laws 1913, p. 254. (12) Section 40 is not uncon-
stitutional in denying those taken into the district by
extension of boundaries the equal protection of the laws.
The difference in the requirements for incorporating a
district from the requirements for extending its bound-
aries are reasonable and a proper classification. The
construction contended for by relators would render
void all laws for the extension of city limits, which have

been repeatedly upheld. Drain. Dist. v. Turney, 235
Mo. 80; Minors Bank v. Clark, 252 Mo. 26; State ex inf.
v. Kansas City, 233 Mo. 162; Little River Drain. Dist.
v. Railroad, 236 Mo. 109; Land & Stock Co. v. Miller,
170 Mo. 240. (13) The relators should be estopped because
of their long delay in filing this proceeding. State ex
inf. Killam v. Consolidated School Dist., 277 Mo. 458.
(14) The Circuit Court Drainage Act of 1913 does not
require that the plan for reclamation be filed in the cir-
cuit court prior to or at the time of the filing of the
petition for the extension of the boundaries of the dis-
trict. The plan for reclamation is for the information of
the commissioners in assessing the benefits and damages
and for the information of the court in the hearing up-
on the commissioner's report. Section 40 permits the
filing of objections to the extension of the boundary
upon any conceivable ground which must be heard by
the court. In no event, could the failure to file the plan
with the court prior to the filing of the petition be con-
sidered jurisdictional even had the act required it. In
this case the Plan had been adopted by the board of
supervisors prior to the filing of such petition. Laws
1913, p. 254, sec. 40. (15) Section 40 of said Circuit
Court Drainage Act should be liberally construed and
nothing held jurisdictional unless the Legislature has
clearly made it so. Such is the plain mandate of the
act itself. Law 1913, page 267, secs. 62, 63; State ex
rel. v. Taylor, 224 Mo. 455; State ex rel. v. Rolwing, 269
Mo. 171; In Re Mingo Drain. Dist., 267 Mo. 268.

ELDER, J.—This is an original proceeding by *quo
warranto* brought upon information of the Attorney
General at the relation of Charles D. Cole and others,
owners of 3116.55 acres of land in Ray County, against
the respondent, Norborne Land Drainage District Com-
pany, seeking to annul a judgment of the Circuit Court
of Carroll County extending the boundary lines of said
drainage district, and to oust respondent from exercis-
ing over the lands of relators the franchises, powers

and privileges of a legally organized drainage district and public corporation.

The Norborne Drainage District was orginally incorporated by decree of the Circuit Court of Carroll County in May, 1899, and comprised about 14,400 acres of wet, swamp and overflow lands in Carroll and Ray counties. At the January term, 1917, of the said circuit court the district was reorganized under the provisions of an act of the General Assemby pertaining to the "Organization of Drainage Districts by Circuit Courts" (Laws 1913, pp. 232 to 267), the said district as reorganized having the same boundaries as the original district, but embracing none of the lands of relators. Thereafter an engineer was employed to make surveys of the lands in the district and adjacent thereto and he prepared a "Plan for Reclamation" for draining, leveeing and reclaiming the same, which plan was adopted by the board of supervisors of the drainage company on December 5, 1917, and filed with the Clerk of the Circuit Court of Carroll County on December 31, 1917. On December 5, 1917, the board of supervisors of the respondent company filed in the office of the Circuit Clerk of Carroll County a petition asking that the boundary lines of the district be extended so as to include the lands of relators and other lands. This petition was not joined in by relators. It is in part as follows:

"These petitioners show to the court that the boundary lines of said Norborne Land Drainage District Company, as incorporated and now existing, and as said boundary lines are now established and defined, comprise a large area of low, wet, swamp or overflowed land or lands that are subject to overflow, and that adjacent to and bordering upon said district is a large area of low, swamp or overflowed lands and lands that are subject to overflow, and which will be benefited by being included within the boundaries of said district and becoming a part thereof; that the ditches, drains and improvements contemplated by said district will render said lands more valuable for farming, making them more productive and improve the sanitary condi-

tions of said land, and will largely increase the market value of said lands; all of which said lands are included within the boundary lines as described and defined in the prayer of this petition.

"Wherefore, these petitioners ask and pray the court that the boundary lines of said district be extended so as to include lands situated in Carroll and Ray counties, Missouri, not described by and included in the articles of association and decree of the court incorporating said district; that is to say, petitioners ask and pray the court that the boundary lines of said district be extended so that the following will be a part of or the extended boundary line of said district, to-wit.''

Notice of the filing of said petition, as required by statute, was duly given, and objections were filed by persons owning land both within and without the proposed boundary lines of the district, including a number of the relators herein. A hearing was had on the said objections, and the circuit court sustained those filed by some of the owners of lands, but overruled those filed by relators. On August 12, 1918, the court rendered a judgment and decree by which it added 23,952.42 acres to the district. Said decree recites in part the following:

"The court finds that all of the land contained within the above boundary line is situated in Carroll and Ray counties, Missouri, and is a contiguous body of swamp, wet or overflowed land or land subject to overflow, and that all of the lands contained within the above described boundary line are contiguous and will be benefited by the construction of the improvements provided for in said plan for reclamation, and that all of the lands and property contained within said boundary line not included within the original boundaries of said Norborne Land Drainage District Company are of such a character and are so situated that unless they were included within the boundaries of said Norborne Land Drainage District Company of Carroll County, Missouri, they would share in the benefits of the work provided for by said plan of reclamation without contributing to the cost of the same, and that it would be inequitable to allow said

lands and property to derive the benefits from the construction of the improvements provided for in said plan for reclamation without contributing to the cost of the same. It is therefore adjudged and decreed that the above described line be or constitute the extended boundary line of the Norborne Land Drainage District Company, of Carroll County, Missouri, and that all of the lands and property within the above described boundary line be and constitute the Norborne Land Drainage District Company, of Carroll County, Missouri."

By said decree and pursuant to petition therefor, the court appointed three commissioners to assess benefits and damages accruing to the lands of relators and the other lands in the district as extended. The commissioners having filed their report, and notice thereof having been given as provided by law, several of the relators, among others, filed exceptions thereto. Upon a hearing of said exceptions the report of the commissioners was modified and amended as to some owners, but confirmed as to others. By its decree dated December 23, 1919, the court modified and approved the report of the commissioners. In the course of said decree it is recited:

"The court further finds that all of the lands, included within the boundary line of said Norborne Land Drainage District as heretofore extended by this court, constitute and are a contiguous body of swamp, wet and overflowed lands, and lands subject to overflow, and that the owners of a majority of the acreage of the land within said extended boundary line were at the time of said extensions in favor of the extension of said boundary line as the same has been extended by this court, and that said owners of a majority of the acreage of the land within said extended boundary lines were and are in favor of the execution and carrying out of the plan for reclamation herein; and the court further finds that the owners of a majority of the acreage of the real estate and other property within the boundary line of said district as the same have been extended by this court, and the owners of the real estate and other property whose names are subscribed to the articles of as-

sociation of said district are and were at all times willing
to and do oblige themselves to pay the tax or taxes which
may be assessed against their respective land and other
property to pay the expense of organizing and of making
and maintaining the improvements that may be necessary
to effect the reclamation of said lands and other property
within said drainage district, and to drain and to protect
said land within the boundary line of said district as
the same has been extended by this court from the effect
of water.''

By stipulation of counsel for the parties hereto,
filed in this court, it is agreed that the board of super
visors of the respondent company ''are preparing to
exercise the privileges and rights conferred upon said
drainage district by the decrees of the Circuit Court of
Carroll County of August 12, 1918, and December 23,
1919, and have submitted the court record leading up
to said decrees and the record proceedings of the board
of supervisors preparatory to selling the bonds in said
district for the purpose of obtaining money wherewith
to construct drainage works called for by said plan for
reclamation.''

The information filed herein, comprising forty-six
pages of the record, after describing the lands of rela-
tors and reciting in detail most of the facts above set
forth, alleges that respondent ''without any legal right
or authority whatever, has usurped and exercised fran-
chises and liberties and still is usurping and exercising
powers, franchises, privileges and liberties not possessed
by it as a public corporation of the State of Missouri, and
has undertaken to exercise and still does usurp and exer-
cise, and ever since the 23rd day of December, 1919, has
usurped and exercised, franchises and corporate author-
ity and powers not conferred on it by law as a drainage
district and quasi-municipal corporation, over the follow-
ing lands, situate in Township 52 and Range 26, in Ray
County, Missouri;'' that the lands of relators ''are not
swamp, wet or overflow lands, or lands subject to over-
flow, and do not, together with the lands in the district
as reorganized in 1917, constitute a contiguous body of

swamp, wet or overflowed lands, or lands subject to over-
flow, but is high and dry land, and no system of drainage
that may be constructed for draining, leveeing and re-
claiming the lands embraced in the district as reorganized
in 1917 will benefit or drain or reclaim said lands or
protect them from the effects of water; that the plan
for reclamation adopted by respondent drainage district
contemplates, as a part thereof, a levee which surrounds
or partially surrounds the lands of relators hereinabove
described, and a ditch which runs into and on the said
lands of relators; that neither said levee nor said ditch
was or is necessary to reclaim, in whole or in part, any
of the lands included in said drainage district as re-
organized in 1917; but said plan for reclamation was pre-
pared and was adopted, and especially were said levee
around and the ditch through said extended territory in-
cluded therein, with the view and for the purpose of af-
fording an excuse and justification for adding relators'
said lands to said drainage district in order that they
might be made to pay the cost of draining and reclaiming
the lands within the district as reincorporated, and not
because the extension of its boundaries so as to em-
brace said lands was necessary for the proper reclama-
tion and protection from water of the lands already in
the district; that none of the improvements provided for
and included in the plan for reclamation adopted by re-
spondent was or is necessary for the proper reclamation
and protection from the effects of water of the lands
embraced in the respondent drainage district as re-
organized in 1917; that other and different feasible plans
for properly and efficiently reclaiming and protecting
from the effects of water the lands so embraced in said
district could have been adopted and executed, without
extending its boundaries so as to include relators' said
lands; and that relators have never consented that the
boundaries of said district might be extended so as to
embrace and add to said district their lands hereinabove
described. Informant therefore charges that there was
no just reason, in law or in fact, for extending the bound-
aries of said drainage district so as to add thereto the

lands of relators above described.'' The information further alleges that the judgment of the circuit court of August 12, 1918, was void for the reason that the court had been given ''no opportunity of determining that the costs of constructing necessary drainage works for draining, leveeing and reclaiming the lands and other property contained in the district organized would be less than the benefits that would be assessed against the lands and other property in said district;'' that Section 40 of the Act of 1913, under which the court proceeded, does not ''confer upon the circuit court power or authority to extend the boundary lines of a drainage district so as to add other large tracts of land thereto, upon the petition of its board of supervisors alone, but is a mere correction statute, designed and intended to afford means and methods for correcting errors, omissions and other mistakes in the plan of reclamation adopted by the board, and to so alter and extend the boundaries as fixed by the decree incorporating the district as to include therein lands constituting a part of the contiguous body of swamp, wet or overflowed lands that should have been described and included in the articles of association and decree of the court incorporating the district, but which by omission or other mistake were not described by or included therein, but were erroneously and inadvertently omitted therefrom; that the Circuit Court of Carroll County had no jurisdiction or authority, by reason of said Section 40 or any other statute, to so extend the boundary lines of respondent drainage district as to include the lands of relators;'' that said Section 40 is void and in violation of Subdivisions 26 of Section 53 of Article IV of the Constitution of Missouri, of Sections 4 and 30 of Article II of the Constitution of Missouri and of Section 1 of Article XIV of the Amendments to the Constitution of the United States; and that the extension of the district ''is not conducive to the public health, convenience or welfare, or of public utility or benefit.''

The return and answer of respondent, comprising forty-five pages, pleads in detail the facts relating to its incorporation and reorganization and the extension of the boundaries of the district, denies the charging allegations of the information, alleges that relators have been guilty of laches and are estopped from maintaining this action, and avers that in all things it has lawfully exercised its privileges and franchises.

The reply of relators puts in issue all of the controverted facts raised by the information and return.

With the pleadings and exhibits incident thereto there have been filed in this court the plan for reclamation and voluminous topographical and profile maps of the district.

Upon this record, necessarily epitomized but fairly outlining the issues urged, the cause has been briefed and submitted.

I.  At the threshhold of a consideration of the points urged by relators we are met by the contention of respondent that *quo warranto* will not lie in the present proceeding. This insistence is vital. If sustained, it disposes of the case.

*Quo warranto* is one of the most ancient writs known to the common law. Formerly a criminal method of prosecution, it has long since lost its criminal character and is now a civil proceeding, expressly recognized by statute, and usually employed for trying the title to a corporate franchise or to a corporate or public office. It is not primarily an action in the interest of any individual, but is intended to protect the public generally against the unlawful usurpation of franchises or offices. And it is not in any sense, a writ of correction or review. [State ex inf. Crow v. Fleming, 158 Mo. l. c. 563.]

Quo Warranto.

In the case at bar relators pray that the ''judgment of the Circuit Court of Carroll County of August 12, 1918, and the judgment of said court of December 23, 1919, confirming and making final said former judgment,

be annulled and for naught held, in so far as they affect the lands of relators hereinabove described." Clearly, the granting of such relief is beyond the purview of our authority, when measured by the functions of *quo warranto*. Respondent, being a corporation, we are limited to determining by what right it wrongfully or illegally exercises a certain franchise, or to ousting it from the right to be a corporation, for an abuse or non-user of franchises granted. [State ex inf. Crow v. Atchison, Topeka & Santa Fe Ry. Co., 176 Mo. l. c. 711.] And it is not for us to review the action of the circuit court in extending the boundary lines of the district in question. That that court acquired jurisdiction and that relators had an opportunity to be heard can not be denied, for the record shows conclusively that all of the requirements contemplated by Section 40 of the Act of 1913 (Laws of Missouri 1913, page 254), governing the matter of extension, were fully complied with. Nor will mere erroneous findings of fact or errors of judgment, if any, afford sufficient ground for us to overthrow the judgment of the trial court. In the absence of fraud, which is here neither charged nor proven, the decree must be treated as conclusive. Thus, in State ex inf. Crow v. Fleming, 158 Mo. 558, a proceeding by *quo warranto* to test the validity of the incorporation of a city by the county court, this court held, l. c. 563; "The action of the county court in that matter was judicial, and its error, if error it made in judgment, cannot be brought to this court for review by writ of *quo warranto*. *Quo warranto* is, in no sense, a writ of correction or review. To assail an order of the county court in the matter of incorporating a city or town, or to disturb the result of its judgment, through the office of the writ of *quo warranto*, all the essential infirmities thereof, and iniquities therein, resulting from the manner of its procurement, or the fraud of the court, must be alleged and proven with the same strictness that would be required in a bill in equity having for its object the annullment of the final judgment of any court of record of

290 Mo.—9

130    SUPREME COURT OF MISSOURI,

State ex inf. McAllister v. Norborne Land Drainage District Co.

the State, brought about by fraud or collusion. An error of fact, made by the county court in a matter of calculation, computation, or of numbers, or of law, upon the question, such as, who are and who are not 'taxable inhabitants' of a designated community, •are no more fatal to the integrity, fidelity or conclusiveness of the judgment by that body, ordering the incorporation of the city or town, than would like errors made by any other court of record of the State.''

And in State ex rel. Rose v. Job, 205 Mo. 1, in which *quo warranto* was invoked to test the legality of the organization and change of boundary lines of certain school districts, it was held that the writ would not authorize a review of errors of judgment made by a board of arbitrators, Fox, P. J., speaking for the court, saying, l. c. 32: ''If the record discloses that the board of arbitrators acquired jurisdiction to determine the questions of difference submitted to them and they have rendered a judgment upon such questions, in the absence of a showing that the judgment itself was procured by fraud, then the decision of the board of arbitrators upon the questions of difference submitted to them becomes conclusive.'' Accordingly, we are not warranted in disturbing the judgment of the trial court.

II.   The charge by relators that respondent ''without any warrant of law whatever, has usurped and is still usurping and exercising the powers, franchises, privileges and prerogatives of a legally organized drainage district and quasi-municipal corporation over the lands of relators,'' coupled with their prayer of ouster, brings us, however, to the determination of a more serious question. While what we have said supra is applicable to this inquiry, we shall, however, proceed to discuss additional reasons for the unavailability of the writ here urged.

Limited Right of Review.

The proceedings to extend the boundary lines of the respondent district were brought pursuant to the pro-

visions of the act relating to the "Organization of Drainage Districts by Circuit Courts" (Laws 1913, page 232). That act has been adjudged to be special, independent of the civil code, and not governed thereby. As said by WALKER, J., in Mississippi & Fox River Drainage District v. Ackley, 270 Mo. 1. c. 173, "The drainage act being purely a statutory proceeding, both as to the tribunal and the character of the proceedings, was unknown to the common law and the act is special and constitutional and the provisions of the code of civil procedure are not applicable thereto. In its present amended form it is a code unto itself. It is in all respects as to its provisions like the election law, forcible-entry-and-detainer law, road law and eminent domain statutes, and should be strictly followed and so construed, independent of the civil code. . . . Not being placed in the statute under the civil code of procedure, it is independent of it and is not governed by it." We are therefore obliged to be guided by the provisions of the act itself for a determination of the extent and method of a review of proceedings had thereunder.

An examination of the act reveals that the only method of review contemplated thereby is found in Section 16, wherein it is provided that an appeal may be taken from the judgment of the court rendered upon exceptions filed to the report of the commissioners upon the question of benefits and damages assessed; and then the appeal is limited to a determination of: First, whether just compensation has been allowed for property appropriated; and, second, whether proper damages have been allowed for property prejudicially affected by the improvements. By Section 36 it is further provided that no appeal "shall be permitted to act as *supersedeas* or to delay any action or the prosecution of any work begun under the provisions of this law." As held by this court in Mississippi & Fox River Drainage District v. Ackley, supra. 1. c. 169, by amendments to the original drainage act, now incorporated in the Act of 1913, the Legislature "intended to and did take away

the right of appeal from the decree incorporating the district, as well as from all other questions not specifically provided for in the act." That the Legislature had the right to limit the right of review has been passed upon in Birmingham Drainage District v. Chicago, Burlington & Quincy R. R. Co., 274 Mo. 140, wherein it was said, l. c. 156. "We fail to see any constitutional or any other reason why the intention of the Legislature, evident upon the face of this act, to confine our right of review in these cases to the assessment of damages upon appeal taken within the time provided by statute, should not be respected." In the same case, which was a proceeding by writ of error to the Clay County Circuit Court to review an assessment of benefits, this court, in dismissing the writ, held, l. c. 157, that it was not for us to extend the right of review as limited by the Legislature, "*either with respect to its extent or the mode prescribed by the Legislature for its exercise.*" To the same general effect was our holding *en banc* in State ex inf. Crow v. Atchison, Topeka & Santa Fe Ry. Co., 176 Mo. 687, a proceeding by *quo warranto* to oust the railway company from the exercise of certain rights and franchises for illegally exacting a reconsignment charge on shipments of grain. There the principle was enunciated that the Legislature having made provision for the regulation of transportation charges by railroads and prohibiting discriminations, *quo warranto* would not lie, BURGESS, J., speaking for the court, saying, l. c. 716: "These statutes have been enacted in pursuance of the Constitution, the remedies therein pointed out for redress for damages sustained *is exclusive,* and it is therefore not within the jurisdiction of this court to entertain *quo warranto* against defendant on account of any such matter." In Elsberry Drainage District v. Meyer, 277 Mo. 439, the rule was laid down that no appeal lies from a judgment extending the boundary lines of a drainage district. In State ex rel. Manion v. Dawson, 225 S. W. 97, where *certiorari* was invoked to quash the record in a proceed-

ing for the extension of the boundary lines of the Albany Drainage District, this court *en banc* declined to review the action of the circuit court, holding that the matter of fixing boundaries, whether by an original decree of incorporation or by extension proceedings, is a legislative act.

Accordingly, in view of our decision in the Birmingham Drainage District case, supra, declining to extend the right of review as limited by the Legislature and holding that a writ of error would not lie to secure a review; in view of our pronouncements in State ex rel. Manion v. Dawson, supra, and Elsberry Drainage District v. Meyer, supra, that neither *certiorari* nor an appeal afforded a remedy by which to review a decree extending the boundary lines of a drainage district; in view of the fact that our power to issue writs of error, *certiorari* and *quo warranto* are all derived from the same section of the Constitution, to-wit, Section 3 of Article VI; therefore, by analogy and a parity of reasoning, it is but consistent that we deny the right of review in this case. We therefore hold that under the doctrine prevailing in this State, *quo warranto* does not lie in the present instance. This conclusion is in accord with precedent in the State of Illinois upon facts closely analogous to those at bar. [See People v. Cooper, 139 Ill. 461, and People v. Drainage District, 193 Ill. 428.]

Having thus concluded, it becomes unnecessary to pass upon the further questions ably briefed by counsel for both relators and respondent.

Our order is that the writ of *quo warranto* heretofore issued be quashed. All concur; *James T. Blair, C. J.,* in paragraph I and the result.