State, ex rel. v. Townsley.

STATE OF MISSOURI, *ex rel.*, H. CLAY EWING, ATTORNEY GENERAL, Relator, *vs.* CHAS. P. TOWNSLEY, Respondent.

1. *Elections–Official returns–Governor and Secretary of State cannot go behind.* —In counting votes for a Circuit Judge, neither the Governor nor the Secretary of State have any authority to go behind the returns officially certified to the Secretary.

2. *Quo warranto—Change of venue—Application for, to what court addressed, etc.*—Where in *quo warranto* the issues of fact are ordered by the Supreme Court to be tried in a specified county, application for change of venue made to the court of that county is properly overruled. - Any objections to the venue should in such case be addressed to the Supreme Court.

The general law touching change of venue has no application to such a case.

3. *Quo warranto—Circuit Judge—Returns of election, correctness of issues touching.*—In *quo warranto* on the relation of the Attorney General to test the title of a Circuit Judge to his office, defendant averred generally that he was duly elected. Plaintiff's replication set out specifically the returns from the counties comprising the circuit, and charged that the returns from a certain county had been excluded from the count. Defendant's rejoinder was a general denial of the averments of the replication—nothing more; *held,* that the correctness of the returns was not put in issue by the pleadings, and could not be enquired into.

In *quo warranto,* parties cannot go behind the official returns, unless the specific objections thereto be stated in the pleadings ; there must be, *e. g.,* a specification of the number and names of the voters alleged to be illegal ; general averments in reference thereto are insufficient.

4. *Quo warranto—Supreme Court—Common law.*—In the State of Missouri, pleadings in *quo warranto,* in the absence of any statute, are governed by the common law.

5. *Quo warranto—Defendant's title to be tested under—Plaintiff's right determined incidentally, when.*—The primary and fundamental question, in a proceeding in *quo warranto,* is whether the defendant is legally entitled to hold the office, and not as to the rights of any other person who may claim it. Where the information is on the relation of one who himself claims to have been elected, his rights may incidentally have to be determined, but not where the proceeding is instituted by the State.

*Information in nature of a Quo Warranto.*

*R. E. Rombauer & Geo. D. Reynolds,* for Defendant.

The returns and abstracts in the County Clerk's Office were not conclusive but only *prima facie* evidence, and the defendant should not have been forbidden to go behind them.

That defendant's position is correct, will appear from the following authorities and uniform adjudications on this subject

in this and other States; (Cooley, Const. Lim., 3d ed., § 623; Mayo vs. Freeland, 10 Mo., 630; State, *ex rel.* Bell vs. Harrison, 38 Mo., 540; State vs. Rodman, 43 Mo., 256; Brown vs. Hixon, 45 Mo., 340; State *ex rel.* Att'y Gen. vs. Steers, 44 Mo., 225; State, *ex rel.* Att'y Gen. *vs.* Vail, 53 Mo. 225; People vs. Van Slyck, 4 Cow., 297; People vs. Ferguson, 8 Cow., 102; People vs. Vail, 20 Wend., 12; People vs. Seaman, 5 Denio, 409; People vs. Cook, 8 N. Y., 67; Attorney General vs. Barstow, 4 Wis. 567, 792; Attorney General vs. Ely, 4 Wis., 420; State, *ex rel.* Gates vs. Felter, 12 Wis., 566; State, *ex rel.* Field vs. Avery, 14 Wis., 122; People, *ex rel.* Att'y Gen. vs. Tisdale, 1 Dougl., 59; People vs. Higgins, 3 Mich., 233; Dishon vs. Smith, 10 Iowa, 211; People, *ex rel.* vs. Matteson, 17 Ill., 167; Taylor vs. Taylor, 10 Minn., 107; People vs. Jones, 20 Cal., 50; Calaveras County vs. Brockway, 30 Cal., 325; State vs. Johnson, 17 Ark., 407; Wammack vs. Holloway, 2 Ala., 31; Marshall vs. Kerns, 2 Swan., [Tenn.] 68).

NAPTON, Judge, delivered the opinion of the court.

This is a proceeding by the State, through the Attorney General, by way of information in the nature of a *quo warranto*, to try the right of defendant to the office of judge of the sixth judicial circuit.

The defendant, by way of plea, set up that he was duly elected on the first Monday in November, 1868; that within due time the Secretary of State, in the presence of the Governor, opened the returns and cast up the votes given in the counties composing said circuit, and that said Secretary certified to the Governor that said defendant had received the highest number of votes at said election; and thereupon the Governor issued a commission to said defendant for six years, etc.

To this plea or answer there was a replication denying all the facts stated in the plea, and then specifically alleging the facts to be as follows: That at said November election there were two candidates for circuit judge of the sixth circuit, to-

wit : the defendant and one William T. Wood ; that said circuit was composed of the counties of Cass, Johnson, Pettis, Saline, Lafayette and Jackson ; that at said election said defendant received 6656 votes, and the said Wood, 6912 votes ; that in fact, the vote in Cass county for defendant was 1014, in Johnson county, 1374, in Pettis county, 957, in Saline county, 584, in Lafayette county, 901, and in Jackson county, 1429, in all 6078 ; that Wood received in Cass county, 1158 votes, in Johnson county, 937, in Pettis county, 830, in Saline county, 392, in Lafayette county, 556, in Jackson county, 3039, in all, 6912 votes. The plaintiff avers that the returns of all said votes so cast were duly made to the Secretary of State, in due time and manner; that it was the duty of said Secretary to open said returns in presence of the Governor, &c., and cast them up, and give to the candidate having the highest number of votes a certificate of his election, but that said Secretary did not open the returns from Jackson county as provided by statute, but refused to do so, whereby said Wood was deprived of the benefit of 3039 votes given to him in said Jackson county, and that said certificate in favor of defendant was fraudulent and false, and further, that said returns from Jackson county in said Secretary's office are lost or destroyed.

The rejoinder merely denied in a variety of forms the specific allegations of the replication and repeated the statement in the plea.

The defendant demanded a jury to try the issues of fact made by the pleadings, and the parties not being able to agree on the county to which the case should be sent, this court ordered the case to Jackson county to have the issues determined. These issues were : First, did the Clerk of the County Court of Jackson county send the Secretary of State, at Jefferson City, an abstract of the returns of the election held in November, 1858, in Jackson county, including the election of circuit judge for the sixth judicial circuit, by mail or otherwise? Second, did returns of the election exist from which said abstract was made ? Third, did the Secretary of State re-

ceive said abstracts at his office by mail ? Fourth, if such abstract was not received by the Secretary of State, did he send a messenger for such abstracts at any time within forty days from the time of the election ? Fifth, who were candidates for circuit judge at that election, as indicated by the returns, and what number of votes did each receive, according to the returns or abstract ? Sixth, did the Secretary of State include the vote of Jackson county in counting the votes for the candidates for the office of judge of the circuit court at the election in November, 1868 ?

On December 1, 1873, the case came up for trial in the Circuit Court of Jackson county, and the defendant applied for a change of venue, on the ground of the prejudice of the inhabitants of said county against him, which was overruled. This application was supported by the affidavit of the defendant. An application was then made for a continuance, on account of the absence of Thomas C. Fletcher and Francis Rodman, material witnesses for the defendant, which motion was also overruled, but the defendant was allowed ten days in which to procure the testimony of said Rodman and Fletcher.

At the expiration of the ten days, the case was again called. and the State, through the Attorney General, proceeded with the testimony, and no evidence whatever was offered by the defendant, and the jury returned the following verdict:

First— That the Clerk of the County court of Jackson county did send to the Secretary of State such abstract by mail.

Second—That returns of the election from which said abstract was made, did exist.

Third—That the Secretary of State did receive said abstract at his office by mail.

Fourth—That said abstract was received, and that the Secretary of State did not send such messenger.

Fifth—That C. P. Townsley and W. T. Wood, were candidates for circuit judge at said election ; and that the said C P. Townsley received at said election, 1429 votes; and the said W. T. Wood, received 3039 votes, according to the returns and abstract.

Sixth—That the Secretary of State did not include the vote of Jackson county in counting the votes for the candidates for the office of judge of the Circuit Court, at the election in November, 1868.

The evidence on the trial of these issues was altogether one way. The depositions of Governor Fletcher and the Secretary of State, Rodman, and the present Secretary, Weigel, and the clerk and deputy clerk of Jackson county, all established, without the least contradictory evidence, that the returns from Jackson county of the election in November, 1868, were duly made out and an abstract of them forwarded to the Secretary of State, and were duly received by said Secretary; and were not counted by these officials in declaring the results and giving the commission of judge of the sixth circuit to defendant; and that these returns from Jackson county, if counted, would have given the office to Wood, by about nine hundred majority.

As we have already decided in the case of State vs. Vail, (53 Mo., 97,) and in various other cases cited in that opinion, that neither the Governor or Secretary of State, had any authority to go behind the returns officially certified to the Secretary, it follows that the commission to the defendant was illegal and void, and that a judgment of ouster must necessarily follow.

But as an elaborate argument has been made to show that some of the positions taken in the Vail case are not in conformity to the views entertained in other States, in regard to the extent to which courts may go in cases of *quo warranto*, a few observations may not be amiss to state more specifically what was decided then and what we adhere to now.

Preliminary to this point, however, we may here state, that the application for a change of venue made in the Circuit Court of Jackson county was properly overruled. The issues of fact were ordered to be tried in that county by this court, and any objections to the venue should have been addressed to this court. No objections were made here and the general law in relation to change of venue has no application to this case.

And the motion for a continuance was properly overruled, and whether properly or not, it is manifest that the time given by the court to procure the testimony of the absent witnesses was sufficient, since, in the trial of the issues, their testimony was read, though not by the defendant.

It is now urged that the defendant was not allowed, by the issues made up by this court, to go behind these turns and abstracts of Jackson county (this being the only county concerning which there was any dispute) and show that these returns and abstracts were false, and that the defendant was duly and legally elected. This, of course, could only be done by proving that the sixteen hundred and ten voters, who constituted the majority for defendant's competitor in that county, were illegal voters, or never voted, or that the competitor was disqualified for holding the office.

It would be a sufficient answer to this, that no such issue was made by the pleadings. There is a general averment in the return or plea that the defendant was duly elected; but the replication is specific, stating the returns from the counties composing the circuit and asserting that the returns from Jackson county were excluded from the count on which the defendant was commissioned. There is no rejoinder putting in issue the correctness of these returns. It simply denies the averments of the replication.

The mere allegation in the plea that the defendant was elected amounts to nothing, and the denial of that allegation makes no issue. It would be equivalent to the plea of not guilty in an action of trespass or trover at common law, but our code of practice requires the real defenses to be set out. Certainly, if we are to give the liberal construction claimed for a trial on an information in *quo warranto*, and allow parties to go behind the returns of the officers appointed by the State, the specific objections to the returns must be stated, so that the ground on which they are disputed may be understood.

The decisions in other States, in which it seems an information in the nature of a *quo warranto* is regarded as a mere case of a contested election, are not authoritative here. The

statutes of such States may have authorized such conclusions. We have no statute here in relation to such proceedings in the Supreme Court, and we have been governed by the common law of England. Under that we have held that the qualifications of electors could not be inquired into, in a *quo warranto*, unless there was no other means for such investigation provided.

It seems now that in 1868, the act for contesting the election of Circuit Judges was subsequently pronounced unconstitutional, and therefore it is insisted that in the present information such defenses should be allowed.

We answer to this, so far as this case is concerned, that no such issue was made by the pleadings, and of course no evidence was offered to establish such defense. Whether such defense could be offered in an information, under the statute of Anne in the Circuit Court, in which a relator contesting a right to the position is made a party, is not necessary to be decided ; nor is it necessary to decide that it could not be offered in this court, where the pleadings present such an issue.

The question is a mere abstraction in this case. It is only by implication that it could be inferred that the defendant meant to dispute the validity of the returns made by the clerk of Jackson county, or to question the right of the voters, or the eligibility of the candidate voted for. Certainly, if we mean to let in such evidence in a *quo warranto*, there must be a specification of the number of voters alleged to be illegal, and of their names, and of the disqualification of the competing candidate, if such are asserted. A mere general averment of an election is insufficient. The opposite party could not infer from such an allegation that there was any intention to go behind the returns, which, *prima facie*, are binding on the courts as well as on the executive officials.

The primary and fundamental question in a proceeding by *quo warranto*, is whether the defendant is legally entitled to hold the office, and not as to the rights of any other person who may claim it. Where the information is upon the rela-

tion of one who himself claims to have been elected, his rights may incidentally have to be determined, but not where the proceeding is instituted by the State. In the former case, if there is no other mode of contesting the election, provided by the legislature, it may be that the court would allow the proceeding to assume the latitude claimed here, or it may be, that in this court and in a proceeding instituted by the Attorney General, such defenses would be available. It is unnecessary to decide either point in this case. There can be no question on the facts as found by a jury, that the commission to the defendant was illegal ; that neither the Secretary or the Governor had any power to set aside the official returns duly and legally filed in the office of Secretary of State. As these returns indicated that the defendant lacked about nine hundred votes of being elected, it would seem to be a very unfounded inference that the court, in declaring the invalidity of his commission, was disposed to disregard the will of the people of the circuit, by refusing his claim, now asserted for the first time, to attack the validity of the official returns, upon a general allegation of his election. No such issue was made, nor could any such issue have been framed on the pleadings.

Our conclusion is therefore, that the defendant was not entitled to his commission as judge of the Sixth Judicial Circuit, on the official returns filed in the office of Secretary of State. If these returns are false, the defendant is not without his remedy. Their falsity has not been asserted in this case, nor has any attempt been made to prove them false, nor any plea of their falsity been offered.

We shall order a judgment of ouster. The other judges concur. Judges Wagner and Sherwood absent.