STATE OF MISSOURI upon the information of ROY MCKITTRICK, Attorney General, at the relation of THE CITY OF CAMPBELL, Relator, v. ARKANSAS-MISSOURI POWER COMPANY, a Corporation.— 93 S. W. (2d) 887.

Court en Banc, May 2, 1936.

*Roy McKittrick,* Attorney General, *Covell R. Hewitt,* Assistant Attorney General, *C. D. Bray, Jones, Hocker, Gladney & Jones* and *Vincent L. Boisaubin* for relator, City of Campbell.

16

*A. Z. Patterson* and *D. C. Chastain* for respondent.

TIPTON, J.—On May 17, 1935, the Attorney General of the State of Missouri at the relation of the city of Campbell, Missouri, filed an original proceeding in this court in the nature of *quo warranto* against the Arkansas-Missouri Power Company, as respondent, praying that this court make an order directing the respondent to forthwith remove its poles, wires and other equipment from the streets and alleys of the relator, and to discontinue further sales of electric current to the inhabitants of that city.

So that the issue decided in this case may correctly be understood, we deem it advisable to summarize the pleadings.

The information alleges that the relator is a city in Missouri of the fourth class; that on January 5, 1915, it granted to Ben F. Eicholtz and assigns a franchise to erect and maintain an electric light plant and distribution system in that city for a term of twenty years from that date; that Eicholtz accepted and operated under the franchise until July 14, 1924, when with knowledge, consent and acquiescence of the relator, he transferred this franchise to the respondent who has since operated under the franchise rights; that on May 12, 1925, the relator and respondent entered into a contract to light relator's streets; that this contract was for a period of ten (10) years from that date; that on October 2, 1934, the relator notified the respondent that the franchise would not be renewed upon its expiration on January 5, 1935; that on January 1, 1935, the board of aldermen of the relator passed another resolution, referring to

that of October 2, 1934, and further to the effect that the street lighting contract expiring May 12, 1935, would not be renewed; and also that the respondent should remove its poles, wires and equipment from relator's streets, except such as was necessary to carry out the contract expiring May 12, 1935, and that upon the expiration of that contract the remainder of the poles, wires and equipment must be removed; that the respondent was duly notified of this resolution; that upon the expiration of the franchise and contract the respondent has refused to remove its equipment and vacate the streets and alleys of the relator; that on February 15, and March 1, 1935, the respondent publicly announced in a newspaper that it intended to continue to serve the inhabitants of relator; that occupancy of the streets and alleys are without permission of relator and without lawful warrant of authority and that the prayer was for a judgment of ouster.

Respondent's return to order to show cause and answer to relator's information was filed June 3, 1935. This court sustained the relator's motion to strike out certain parts of respondent's return, leaving the return and answer as follows:

"Now comes Arkansas-Missouri Power Company, defendant in the above entitled cause, and for return to the order to show cause issued by this Honorable Court and in answer to the information filed by the Attorney General of the State of Missouri herein, said Defendant shows:

"1. Defendant admits that the City of Campbell is a city of the fourth class; admits that Arkansas-Missouri Power Company is a corporation organized under the laws of the State of Arkansas, with principal place of business in the City of Blytheville, State of Arkansas, and that it is licensed to do and is doing business in the State of Missouri as a foreign corporation.

"2. Defendant, further answering, denies that it has continuously since the 5th day of January, 1935, or the 12th day of May, 1935, maintained its electrical equipment in the streets and alleys and public places of the City of Campbell, and denies that it has continued to furnish and serve the inhabitants of the City of Campbell with electrical current, without warrant of authority, and denies that it has assumed, usurped, and is unlawfully exercising the rights and privileges of maintaining its electrical equipment in the City of Campbell.

"3. Defendant, further answering, states that it and its predecessor have maintained and operated an electrical system in the City of Campbell since the year 1915, with all necessary fixtures and facilities to furnish said City and its inhabitants with electric light, heat and power.

"4. Defendant, further answering, states that on the 14th day

of July, 1924, it acquired from one Ben F. Eicholtz, by purchase, all the right, title and interest of the said Ben F. Eicholtz in and to an electrical plant and system, then engaged in and operated for the purpose of supplying the City of Campbell and inhabitants thereof with electrical service, including certain municipal franchise theretofore on the 5th day of January, 1915, granted by the said City to the said Eicholtz.

"8. Further answering, defendant states that this information in the nature of *quo warranto* was not instituted by any lawful or proper action of the relator City, but was in reality instituted upon the application of a private party, that is upon the application of Fairbanks, Morse & Company, a corporation of the State of Illinois.

"That this suit is not a proceeding in defense of the prerogative rights of the State by the constitutional writ of *quo warranto,* but is a proceeding whereby a private party seeks to secure advantages, which it should undertake by civil action. That leave of Court was not first had and obtained for the bringing of this suit, and for the further reason that same was in reality and in fact brought at the relation of a private party, the same should be dismissed.

"11. Defendant further states that it pleads all the above facts as a defense to the allegations of the information filed herein and as a defense and answer to the order to show cause herein, and defendant pleads all the same as reasons why the relator is not entitled to prosecute or maintain this action; and defendant, further answering, denies all and singular, each and every other allegation contained in relator's information herein.

"WHEREFORE, defendant prays that the order to show cause be quashed; that the information filed herein be dismissed, and that this proceeding be dismissed and abated, and defendant further prays that if this Court deems it necessary, that this Court appoint a Commissioner to hear the evidence and report his findings to this Court to the end that this Court may be fully advised in the premises as to all the facts; and defendant prays for such other and further general relief in the premises, legal and equitable, as this Court shall deem just and proper, together with its costs.''

The relator's reply is a general denial.

This cause was submitted to this court upon the pleadings and an agreed statement of facts.

Briefly the agreed statement of facts are as follows:

"The parties reserve the right to object to any of the facts herein agreed to, on the ground of their irrelevancy, immateriality or incompetency.''

1. The relator, city of Campbell, is located in Dunklin County, Missouri, and is a city of the fourth class.

2. The respondent is a corporation, organized under the laws of

Arkansas and is duly licensed to do business in this State as a foreign corporation.

3. That on the 5th day of May, 1915, the relator granted to Ben F. Eicholtz and assigns a franchise, with the right to erect and operate an electric light, heat and power plant and with the right to enter upon any street, avenue, lane, alley or public ground for the purpose of erecting poles, wires, and other equipment that would be necessary to furnish the relator and its inhabitants with an electric light, heat, and power system.

4. The franchise was for a term of twenty years from January 5, 1915.

5. The franchise was accepted by Ben F. Eicholtz in writing and he erected an electric distribution system to supply the relator and its inhabitants with electric current.

6. On July 14, 1924, Ben F. Eicholtz assigned the franchise and the electric distribution system to the respondent and the sale was made with the knowledge, consent and acquiesence of the relator and since that time the respondent has continued to exercise the rights under the franchise.

"7. The aforesaid sale and transfer from Eicholtz to the defendant was made pursuant to application to the Public Service Commission of Missouri for authority for same. After oral hearing had before the Commission on July 8, 1924, the Commission on said date (July 8, 1924) entered its order by which it did authorize and consent to the sale and transfer by said Eicholtz, of Campbell, Missouri, of the electric light plant and distribution system in Campbell, Missouri, and did authorize and consent to the purchase, ownership and operation by the Arkansas-Missouri Power Company, of Blytheville, Arkansas, of all said electric property, franchise, contracts, etc.

"The City of Campbell, by its then Mayor (W. D. Beasley) and councilmen, waived notice, in writing, of the hearing of the foregoing application pending before said Commission, and stated that they knew of no objection to the transfer being made. Said waiver and statement was filed with the Commission on July 7, 1924.

"Pursuant to the above authority and consent of the Public Service Commission, the defendant reconstructed the distribution system acquired from said Eicholtz and constructed high voltage transmission lines from its central generating stations to the City of Campbell, at cost to it of a sum of approximately $25,000.00, a substantial part of which investment it will lose, together with a severance damage of approximately $20,000.00 if it is denied the right to further operate in the City of Campbell.

"The Public Service Commission of the State of Missouri does not allow an electric utility to charge rates which will allow the setting up of an annual depreciation reserve in excess of four per cent of the

value of the property of the utility used and useful in the service of the public, and the Public Service Commission, after the purchase by defendant of the property from the said Eicholtz and the reconstruction of the lines, entered orders establishing rates for electric service to be charged by the defendant in the City of Campbell, which electric service rates were based upon a depreciation rate of three per cent of the value of the property of the defendant in the City of Campbell used in its electrical service.

"The Public Service Commission of the State of Missouri, since its organization in 1913, has established certain policies and departmental interpretations of the provisions of the Public Service Commission Act of Missouri relating to the fixing of rates of return and of depreciation reserve for public utilities.

"It is stipulated that either party hereto may include in their respective briefs any official order, report, or decision of the said Commission bearing upon the establishment of the said policies and departmental interpretations for the purpose of showing whether or not said policies and interpretations are made upon the basis that the period of operation by such utilities was to be continuous and was not limited by municipal franchises; and the same shall be considered to be a part of the record in this case as fully and to the same extent as if set forth in full herein.

"The said Public Service Commission has from time to time authorized the issuance and sale of first mortgage bonds by defendant which were secured by lien upon defendant's properties, including the Campbell electrical property, which bonds by their terms matured on dates many years subsequent to the expiration of the municipal franchise referred to in relator's petition as the Eicholtz franchise. The aforesaid bonds were sold to the public and are now outstanding.

"But the State and the Relator specifically object to any of the statements and facts in, and evidence which may be adduced under this paragraph upon the ground that same are irrelevant and immaterial; and specifically contend that no alleged policy of the Public Service Commission and no interpretation placed by the Public Service Commission upon the statutes of the State, and, specifically, no such alleged policy or interpretation which would purport to enlarge the rights of the defendant (respondent) to use the streets of the relator City or maintain and operate an electric utility therein, or which would purport to deprive the relator City of the right to limit by franchise the privilege to use its streets for said purpose, and the period of said use, without the specific consent of the City, is in any way binding upon said relator City or in any way in derogation of, or a limitation upon the existing provisions of the statutes of the State and the decisions of this court affecting such matters."

8. On May 12, 1925, relator and respondent entered into a written

contract for the lighting of relator's streets. The contract was for a period of ten years from that date. Pursuant to that contract the respondent has furnished the relator with electric current as provided therein.

9. The relator has in operation a municipally owned electric light and power plant sufficient to furnish the relator and its inhabitants continuous electric service which plant has been in operation since October 2, 1934.

10. On October 31, 1935, the relator was furnishing electric service to 301 customers of that city and the respondent about 21 customers, and at the present time the respondent and relator are each separately serving approximately the same number of customers.

11. On October 2, 1934, at a regular meeting of the Board of Aldermen of the City of Campbell, a resolution was passed that the city would not renew the franchise which expired January 5, 1935, and that a copy of the resolution was to be served on the respondent.

12. Pursuant to this resolution, the respondent was served with a copy of it on October 4, 1935.

13. That on January 1, 1935, the Board of Aldermen of Campbell passed a further resolution referring to that of October 2, 1934, and further to the effect that the street lighting contract expiring May 12, 1935, would not be renewed, and that the respondent be so notified, and specifically to notify the respondent that upon the expiration of the franchise it should remove its poles, wires and equipment, save such thereof as were necessary to carry out the contract expiring May 12, 1935, and that upon the expiration of that contract on that date the remainder of the poles, wires and equipment must be removed.

14. A copy of the above resolution was served on the local manager of the respondent on January 7, 1935, the relator mailed a copy of this resolution to the general manager of the respondent located in Blytheville, Arkansas.

15. The respondent has failed to remove its electrical equipment and vacate the streets and alleys of the relator and is continuing to serve some of the inhabitants of the relator with electric current; and respondent announced in a newspaper advertisement in ''The Campbell Citizen,'' a newspaper published and circulated in the city of Campbell, Missouri, on both February 15, 1935, and March 1, 1935, that it intended to continue to furnish relator's inhabitants with electricity.

16. On May 7, 1935, at a regular meeting of the Board of Aldermen, of the city of Campbell, the board adopted a resolution directing the city attorney, upon the expiration on May 12, 1935, of the contract aforesaid, to procure the consent, assistance and co-operation of the Honorable Roy McKittrick, Attorney General of the State of

Missouri, to institute an ouster suit in the Supreme Court of Missouri in behalf of the said city of Campbell and against the said Arkansas-Missouri Power Company.

"17. On May 17, 1935, leave of this Court was duly had and obtained for the filing of this information in the nature of a *quo warranto* by the Attorney General of the State of Missouri, and on said date said information was filed in this court."

██ This court has original jurisdiction in *quo warranto* proceedings instituted by the Attorney General to test the right and authority of a corporation to use the streets of a municipality for an electrical distribution system. [Art. VI, Sec. 3 of the Constitution of Missouri, Sec. 1618, R. S. 1929; State ex inf. McAllister ex rel. Manion v. Albany Drainage Dist., 290 Mo. 33, 234 S. W. 339; State ex inf. Hadley v. Standard Oil Co., 218 Mo. 1, 116 S. W. 902; State ex inf. Shartel ex rel. City of Sikeston v. Missouri Utilities Co., 331 Mo. 337, 53 S. W. (2d) 394; State ex inf. McKittrick ex rel. City of Lebanon v. Missouri Standard Telephone Co., 337 Mo. 642, 85 S. W. (2d) 613.]

In this case the proceeding was instigated at the instance of the city of Campbell and according to the agreed statement of the information was filed by leave of this court. However, the Attorney General, without leave has a right, at any time, to file in the Supreme Court an information in the nature of a *quo warranto* in any matter in which the public interest is involved. [State ex inf. McAllister v. Albany Drainage Dist., supra.]

██ Consent of a municipality is a condition precedent to the right to use the streets and alleys of said municipality in operating a private electric plant and its distribution system.

In granting such a franchise the municipality acts as the agent of the State and it may grant a franchise for a term not to exceed twenty years, or refuse the franchise and it may refuse to renew or extend the franchise. Without the consent of the municipality no right exists to operate an electric plant therein; and without such consent no right to so operate the plant exists after the termination of the franchise unless the municipality does some act that would estop it from asserting that such right does not exist. There is nothing in the Public Service Act of 1913 that in any way dispenses with such consent. [Secs. 4962 and 7683, R. S. 1929.]

We approve the following quotation in our recent case of State ex inf. Shartel, Attorney General, ex rel. City of Sikeston v. Missouri Utilities Co., supra.

"But Sections 4962 and 7683, supra, plainly make the consent of the municipality, in manner and form there indicated, an essential prerequisite to lawful exercise of the rights therein mentioned, and we find nothing in the Public Service Commission Act or in our decisions construing the same that lends any substantial support to re-

spondent's suggestion that this statutory requirement has been repealed, or that the commission's grant of a certificate of public convenience and necessity is a grant of any privilege, franchise, or right which municipalities, as agents of the State, are empowered to grant or withhold at their pleasure.''

The respondent does not dispute the above propositions of law, for in its brief it says:

''We recognize that this court has held that municipal consent is necessary before a utility may operate within a city even since the passage of the Public Service Commission Act of 1913, and that the mere fact that the utility holds a certificate of public convenience and necessity does not dispense with the requirement that it must have municipal consent to use its streets. This consent may be either express or may arise by estoppel.''

The respondent admits that its franchise expired with the relator on January 5, 1935, and it does not have relator's express consent to operate its plant and distribution system, but respondent in its brief claims that the relator is estopped to deny that respondent is operating its plant without relator's consent for the following reasons:

''The defendant contends that it should not be ousted from the City of Campbell notwithstanding the expiration of the franchise it acquired from Eicholtz, because the rates which it was permitted to charge in Campbell would not amortize the cost of the plant in the eleven-year period prior to the expiration of the franchise, and that the City of Campbell and the State of Missouri are estopped to claim that the defendant does not have municipal consent in the City of Campbell by reason of the fixing of rates which did not contemplate the amortization of the cost of the plant within the period of the franchise.

''It is our contention that to oust the defendant from the City of Campbell when it has been compelled to operate in the City during the past eleven years at rates which would not secure to it the return of its investment would constitute a confiscation of its property without due process of law.

''And likewise an estoppel arises against the City and the State from the fact that the State permitted the issuance of mortgage lien bonds against this property maturing in thirty years, and the order allowing the issuance of the bonds did not require the amortization of them prior to their maturity and expressly permitted the amortization of expenses in connection with the bonds by the company within the period of maturity of said bonds, namely, 1955. Further an estoppel arises by the City accepting the benefits of the reconstruction of the distribution system within the City and the construction of a new transmission line to serve the City of Campbell after the pur-

chase by the defendant in 1924 at a cost of $25,000.00 when the company was permitted to charge only a three per cent depreciation return.''

Estoppel is an affirmative defense and must be pleaded, unless such facts appear from the case made by relator. [State ex rel. Consolidated School District No. 2 of Pike County v. Haid, 41 S. W. (2d) 806, 328 Mo. 739; State ex rel. Jacobsmeyer v. Thatcher, 337 Mo. 1225, 88 S. W. (2d) 187; Ambruster v. Ambruster, 31 S. W. (2d) 28, 326 Mo. 51.] The return and answer of respondent as it now stands does not plead estoppel nor a constitutional question therefore these questions are not before us. ''It is a familar rule that a case must be determined upon the issues raised by the pleadings. To this rule we compel the trial courts to adhere. To the same rule we should adhere in the disposition of an original proceeding here, where we are the triers of the facts as well as the law. In this case the first mention of the unconstitutionality of Section 734, Revised Statutes 1919, is made in the briefs, after the issues were made, the evidence taken, and the cause ready for submission to the court. So we say that the question is not within the issue made by the pleadings, and not really here for determination.'' [State ex rel. v. Grinstead, 314 Mo. 55, 282 S. W. 715.]

The mere fact that the respondent was permitted to operate from the date the franchise expired until its contract with the relator for street lighting expired on May 12, 1935, would not alter the situation. The fact that a utility continued to serve a municipality after its franchise expired, would not, in itself, give the utility any renewal rights. [State ex inf. Shartel, Attorney General, ex rel. City of Sikeston v. Missouri Utilities Co., supra.]

It follows that the respondent is unlawfully using relator's streets and alleys in the operation of its electric system and that the writ of ouster should be granted.

''It is well established that this court may properly exercise a judicial discretion in granting or refusing a judgment of ouster in a *quo warranto* proceeding. [State ex inf. v. School District, 314 Mo. 315, 284 S. W. 135; State ex rel. v. Ellis, 329 Mo. 124, 44 S. W. (2d) 129; State ex rel. v. Cupples Station, Light, Heat & Power Co., 283 Mo. 115, 223 S. W. 75; State ex rel. v. Town of Mansfield, 99 Mo. App. 146, 72 S. W. 471.] It follows that, if a writ of ouster is granted, the court may exercise its judicial discretion in determining its terms. The public good is the element chiefly to be considered as a guide to the court in the exercise of its discretionary authority.'' [State ex rel. v. Missouri Standard Telephone Co., supra.]

In the Lebanon case we directed that the respondent would have a year to remove its poles and wires. But in that case there was no other telephone system in that city, a city of 3600 inhabitants.

While in the case before us, the relator has already established an electric light system capable of serving all of its inhabitants, and now serving all customers except about twenty. We therefore order and direct that a writ of ouster issue herein, that respondent be granted a period of six months within which to remove its poles, wires and other equipment from the streets, alleys and other public thoroughfares of the city of Campbell; that leave be granted to either party to this cause to move this court within said period of six months to modify this order by either decreasing or increasing the period of time fixed for the removal of respondent's property, and that the court reserves jurisdiction to entertain and act upon any motion filed herein within the period mentioned and thereafter make such order or orders as it may deem proper and appropriate in the premises.

Writ of ouster granted as directed in opinion. All concur.