STATE OF MISSOURI on the information of ROY MCKITTRICK, Attorney General, Relator, v. MAX R. WILEY and WILLIAM M. BARBIERI, each purporting to act as Prosecuting Attorney of DeKalb County.—160 S. W. (2d) 677.

Division One, February 26, 1942.

Rehearing Denied, April 16, 1942.

240

*J. Francis O'Sullivan* for respondent Barbieri; *John M. P. Miller* and *Phillip M. Wilson* of counsel.

· *John J. Robison, Harold Miller* and *Frank Pulley* for respondent Wiley.

242

DALTON, C.—This is an original action in quo warranto commenced by the Attorney General filing an information against the respondents. The information charged that each respondent was purporting to act as Prosecuting Attorney of DeKalb County, and alleged that it would be in the public interest for this court to determine the matter. Relator prayed that an order be directed to each to show cause and definitely set forth his rights and claims to the

said office, and asked the court to determine who is the duly qualified Prosecuting Attorney of said county and, having so determined that fact, to oust the usurper from said office. Respondents filed separate answers and returns, each claiming the right to act as Prosecuting Attorney of DeKalb County. This court, thereupon, appointed a special commissioner to hear the evidence and report his findings of fact and conclusions of law. The commissioner, so appointed, has filed his report recommending that respondent Wiley be declared "not to be the duly elected, qualified and acting Prosecuting Attorney of DeKalb County" and that he be enjoined from exercising the powers, rights and authorities of said office, and that the proceedings against respondent Barbieri be dismissed. Respondent Wiley has filed exceptions to the report.

In view of the issues raised, it becomes necessary to consider the pleadings. Relator was granted permission to exhibit one information against the two respondents to try their respective rights to said office in one proceeding. [See Sec. 1784, R. S. 1939, Mo. Stat. Ann., Sec. 1620, p. 1772.] The information, among other things, charged that "respondent, William M. Barbieri, since September 23rd, 1938, has been the duly appointed, qualified and acting Prosecuting Attorney of DeKalb County, Missouri, and is, under the provisions of Sec. 5, Article XIV of the Missouri Constitution, and Sec. 11309, Revised Statutes of Missouri, 1929, entitled to continue to hold the office of Prosecuting Attorney of DeKalb County, Missouri, until a duly qualified successor is elected, commissioned and qualified; and said respondent is now acting and performing the duties of Prosecuting Attorney of said County." It further charged that "respondent, Max R. Wiley, wrongfully and unlawfully filed his declaration as a candidate on the Republican ticket in DeKalb County, Missouri, for the office of Prosecuting Attorney thereof; . . . that at the time of the filing of said declaration of his candidacy for said office, and at the time of the 1940 primary and general elections, said respondent was not and could not have been a bona fide resident of DeKalb County, Missouri, . . . for the twelve months next preceding the date of the 1940 general election .. . . because during the major portion of said time, said respondent was a resident of Clinton County, Missouri . . . and could not, by reason of the aforesaid fact, have been legally elected to the office of Prosecuting Attorney of DeKalb County; that on or about January 1st, 1941, said respondent wrongfully undertook to take the oath of office as Prosecuting Attorney of DeKalb County, and has usurped, intruded into and sought unlawfully to hold and execute the office of Prosecuting Attorney of DeKalb County, and is now attempting to usurp, intrude into and unlawfully to hold and execute said office, and is unlawfully holding himself out as the duly elected, qualified and acting Prosecuting Attorney of said County."

The answer and return of respondent Barbieri realleged, with slight modifications, the facts stated in the information with reference to respondent Wiley and himself and further stated that there had been "no duly qualified successor elected and qualified as Prosecuting Attorney of said county;" and that respondent Wiley was "unlawfully holding himself out as the duly elected, qualified and acting Prosecuting Attorney of said county."

The answer and return of respondent Wiley alleged detailed facts tending to show that he possessed all of the qualifications, required by Sec. 12934, R. S. 1939, denied specifically the allegations of the information as to his disqualification, and alleged that he had been duly elected and commissioned Prosecuting Attorney of said county, had qualified by taking the oath as such, and was performing the duties of the office. The answer further charged (1) that under Sec. 12989, R. S. 1939, respondent Barbieri could only have been appointed to serve "until the next regular election for . . . Prosecuting Attorney;" November 5, 1940, and not until his successor was duly elected or appointed and qualified; (2) that respondent Barbieri at the time of his appointment as such Prosecuting Attorney did not possess the qualifications required, since he had not then been a resident of DeKalb County for twelve months preceding the appointment, and that he had usurped said office; and (3) that respondent Barbieri had forfeited his office by failing to comply with the terms of Sec. 12941, R. S. 1939, by not making reports as required and not paying over moneys collected. Each respondent asked an order establishing his right to the said office and ousting the other therefrom.

On February 13, 1941, relator moved to strike out certain parts of respondent Wiley's answer, including the charges made against respondent William M. Barbieri, supra. The reasons assigned in the motion were that the charges "constitute no defense to the order to show cause herein, and constitute a collateral attack upon the right of the said Barbieri to the office in question." The motion was overruled. No further pleadings were filed.

In the hearing before the commissioner it was admitted with reference to respondent Barbieri (there was some evidence to the same effect) that in August, 1939, the office of Prosecuting Attorney of DeKalb County, Missouri, became vacant by reason of the death of Thomas D. Williams, the duly elected incumbent of that office; that respondent William M. Barbieri was, on September 23, 1939, appointed Prosecuting Attorney of such county by Governor Lloyd C. Stark, the then Governor of the State of Missouri, and a commission was issued to him by the Governor; and that William M. Barbieri assumed said office upon his appointment, served without controversy until January 1, 1941, and since that date had occupied an office in the Court House of DeKalb County, and claimed the

right to said office of Prosecuting Attorney upon the alleged ground that respondent Wiley was disqualified under Sec. 12934, R. S. 1939 (Mo. Stat. Ann., Sec. 11309, p. 597) "by reason of lack of residence."

Over respondent Barbieri's objection that it was "wholly incompetent, irrelevant and immaterial to prove any issue in the case," respondent Wiley was permitted to offer evidence tending to show that respondent Barbieri failed to file a quarterly report as Prosecuting Attorney of DeKalb County for the quarter ending June 30th, 1940. Respondent Barbieri testified that he had filed a report for each quarter, including the one in question, and the County Clerk testified that according to his independent recollection such reports had been filed every quarter. The original reports were not in evidence, but only copies and certain other evidence. However, the originals were last seen in the possession of respondent Wiley. The County Clerk conceded that from his examination of the reports, prior to their disappearance, the report for June 30, 1940, was not filed, and respondent Barbieri was unable to explain how items dated prior to June 30th, 1940, appeared in the report filed by him on September 30, 1940. There was also evidence which respondent Wiley contends shows that respondent Barbieri failed to remit to the county the full amount of all fees collected, and that there was an apparent shortage of $25.00. It is unnecessary to set out this evidence in full. Subject to the objection, supra, it was admitted that prior to November, 1938, respondent Barbieri was a resident of Jackson County, Missouri, but in November, 1938, moved to Maysville, DeKalb County, where he established, and has since maintained his residence.

With reference to respondent Max R. Wiley it was admitted that he was over the age of twenty-one years and possessed all of the qualifications required, except as to the matter of residence, at the time he filed his application to be the nominee of the Republican party for the office of Prosecuting Attorney of DeKalb County, Missouri, in the 1940 primary; that he received the votes which entitled him to such nomination; that he was certified as the candidate of such party for said office; that his name was put upon the ballot at the General Election in November, 1940; that he received the greatest number of votes cast for said office (a majority of 444 votes); that upon the official returns of the result of said election a commission was issued to him as Prosecuting Attorney of DeKalb County, Missouri, by the Governor of the State of Missouri; that on January 2, 1941, he subscribed to the oath required by law to qualify for said office of Prosecuting Attorney; and that he now claims to be the duly elected, qualified and acting Prosecuting Attorney of DeKalb County, Missouri.

The evidence bearing upon the issue as to whether respondent Max R. Wiley had been a bona fide resident of DeKalb County for twelve months next preceding the date of the general election of November, 1940, was substantially as follows:

For twenty years prior to June, 1936, respondent Wiley had resided in Cameron, Clinton County, Missouri, where he held such offices as Justice of the Peace, Police Judge and City Clerk. His family consisted of himself, his wife, his two boys and a Miss Kinsella, who made her home with them. He owned a house, but apparently it was rented out, since in April, 1936, respondent and his family were living on Chestnut Street in Cameron, Clinton County and he didn't feel like he could "keep up this rented place, pay rent and carry the expense." At the city election in April, 1936, he "lost out" as city clerk, that is, he was not re-appointed by the then mayor, and he decided to change his location. At about this time, he had an opportunity to lease a gasoline filling station at Sweet Springs in Saline County, Missouri. He leased the station for one year to improve his financial condition. In June, 1936, he took his family to the new location, where they lived upstairs in the filling station building until May, 1937.

It appears that. Mrs. Florence Smith (whose husband was Mrs. Wiley's brother) resided north of Cameron and in DeKalb County. When respondent decided to go to Sweet Springs, he moved the "greater part" of his household goods to Mrs. Smith's residence, where it was stored. He took the remainder with him to Sweet Springs. On some five or six trips back to Cameron during the next year or two, he spent the nights at Mrs. Smith's residence. When he left Clinton County in June, 1936, he expected to be gone temporarily (to get on his feet) and he expected to return to DeKalb County.

About May 1, 1937, he moved from Sweet Springs to Hickman Mills in Jackson County. ▮▮▮▮ He took his family and some furniture to the new location and there operated a gasoline filling station for four or five months. The family lived in the back of the filling station building. At the time of this move, the remainder of his furniture from Sweet Springs was forwarded to his mother's home in Warrensburg, Johnson County. Most of respondent's household goods, however, was still stored at Mrs. Smith's home in DeKalb County.

In October, 1937, respondent's family moved to his mother's home in Warrensburg (his mother died in March, 1938). Respondent continued to operate the filling station at Hickman Mills until in December, 1937. Thereafter he remained in Warrensburg, Johnson County, until December, 1938. While respondent and his family were residing in Johnson County, he enrolled as a member of the bar at Warrensburg and as a member of the Johnson County Bar. He paid his bar

enrollment fee in Johnson County on January 20, 1938. He was put on the ticket by the Johnson County Republican Central Committee to fill a vacancy and became a candidate for Prosecuting Attorney of Johnson County on that ticket at the general election in November, 1938, but was unsuccessful. On December 6, 1938, after the said general election, he filed his affidavit under the Corrupt Practice Act (Chapter 76, Article 15, R. S. 1939) in the office of the County Clerk of Johnson County. He insisted that he was properly a candidate at this election since, after October, 1937, his home was in Warrensburg and he was just going back and forth, looking after the filling station at Hickman Mills, until December, 1937. While at Warrensburg, he voted at the general election in November, 1938.

On December 8, 1938, respondent left Warrensburg and returned with his family and furniture to his own house (then vacant) at 613 Main Street, Cameron, Clinton County. Before moving into this house it appears that respondent went out to the Smith place, about one mile north of Cameron, where he stayed "several hours." Respondent said he found "there wasn't any place to stay out there," because there were already five or six people in a five or six room, story and a half house. When respondent and his family moved in the house at 613 Main Street, Cameron, Clinton County, they did not intend to stay there. Respondent made inquiries in an attempt to secure a house on the DeKalb County side of Cameron, but, being unable to do so, he had his household goods moved from the Smith place to the Main Street location.

Respondent and his family resided at 613 Main Street, Cameron, Clinton County, from about December 8, 1938, until April 11, 1940. During this period respondent subscribed for light and water service from the local municipal plant. He also subscribed for the local and Kansas City papers and they were delivered to that address until April, 1940. Thereafter they were delivered to 402 Main Street (hereinafter mentioned) in the same city and county until June, 1940.

In April, 1940, respondent and his family moved in with a Doctor Janes at 402 Main, Cameron, because they could not get another place. In the meantime he had released his home to the Cameron Building and Loan Association, the holder of the encumbrance thereon. The deed dated December 29, 1939, described respondent and his wife as residents of Clinton County, but respondent didn't think he drew the deed. While residing at the 402 Main Street address he was present, heard and made no objection to his wife giving 402 Main Street, Cameron, Clinton County as the address for herself and family when the census enumerator came in May, 1940, to take the 1940 census. Respondent thought he paid his bar enrollment fee in Clinton County in 1939, and the record showed he paid the 1940 enrollment fee in that county.

On December 18, 1939, respondent was appointed a Notary Public within and for Clifton County and his bond as such was filed with the County Clerk of Clinton County, under it he took acknowledgments in Cameron, Clinton County, Missouri, up to and including November 19, 1940.

In June, 1940, respondent moved with his family to a house at the corner of Eighth and Cedar Streets, but on the north side of Eighth Street in Cameron, Missouri. This location was in DeKalb County. Bar enrollment fees for 1941 were paid on March 16, 1941, in DeKalb County. On May 4, 1940, before this last move, respondent's brother-in-law visited him and told him that he would not be eligible to run for Prosecuting Attorney in DeKalb County, because he had not resided in that ▮▮▮ county a year as required by law. Respondent replied that he "thought the law was not good."

The commissioner found that respondent Wiley was ineligible to be elected Prosecuting Attorney of DeKalb County because "he was not a resident of DeKalb County at the time of his nomination and election." The commissioner found that it was unnecessary to determine respondent Barbieri's eligibility to be appointed or whether he had forfeited his office, since his right to the office had not been questioned by the information filed.

Respondent Wiley contends that the commissioner erred (1) in the admission of certain evidence; (2) in the exclusion of certain evidence; (3) in failing to hold that respondent Wiley had established sufficient residence in DeKalb County; and (4) in recommending that the proceeding against respondent Barbieri be dismissed. Respondent contends it is the duty of the court to examine "the detailed qualifications of each party, and make findings upon both parties on all matters before the court . . . and if neither . . . is qualified to so decide."

▮▮▮ We will consider the last point first. In doing so, it becomes necessary to consider the pleadings and the issues joined. It will be noticed that the information filed does not charge that respondent Barbieri has usurped, intruded into or is unlawfully attempting to hold and execute said office of Prosecuting Attorney of DeKalb County. It does allege that he is acting and performing the duties of Prosecuting Attorney of said county, but admits that respondent Barbieri "has been the duly appointed, qualified and acting Prosecuting Attorney of DeKalb County, Missouri, and is, . . . entitled to continue to hold the office of Prosecuting Attorney of DeKalb County, Missouri, until a duly qualified successor is elected, commissioned and qualified." Respondent Barbieri did not demur to the information, but answered, realleging the statements of the information with reference to the respondent Wiley and himself, and then averring that there had been "no duly qualified successor elected and qualified." Although no reply was filed, the filing thereof was

waived, and the cause will be heard as if the allegations of the answer were in issue by proper pleading. In any case, the reply could not depart from the facts stated in the information, nor be inconsistent with the position taken therein. The sole issue presented by the pleadings, as between relator and respondent Barbieri, was whether a duly qualified successor had been elected and qualified.

"The pleadings in an information in the nature of quo warranto are governed by the rules in civil cases rather than those which apply to criminal proceedings in matter of form as well as in matters of substance." [State ex rel. Union Electric Light and Power Co. v. Grimm, 220 Mo. 483, 490, 119 S. W. 626; State ex rel. Attorney General v. Steers, 44 Mo. 223, 226.] The issues to be tried are the issues made by the pleadings, to-wit, the issues joined upon the information, answer and reply. [State ex rel. Ewing v. Townsley, 56 Mo. 107, 109, 112-114; State ex inf. Barker v. Armour Packing Co., 265 Mo. 121, 149, 151, 176 S. W. 382; State ex rel. Gentry, Atty. Gen., v. Sullivan, 320 Mo. 362, 8 S. W. (2d) 616, 617; State ex rel. Black v. Taylor, 208 Mo. 442, 447, 106 S. W. 1023; State ex inf. McKittrick, Atty. Gen., v. Arkansas-Missouri Power Co., 339 Mo. 15, 93 S. W. (2d) 887, 893; State ex inf. Miller, Circuit Attorney, v. St. Louis Union Trust Co., 335 Mo. 845, 74 S. W. (2d) 348, 353(1); State ex inf. McAllister, Atty. Gen., v. Norborne Land Drainage District Co., 290 Mo. 91, 234 S. W. 344, 347.] The rule in this State is that "where usurpation of a public office or a franchise is claimed by the State and an information is filed by the Attorney General to test the right to hold such office or enjoy such franchise, it is only necessary to allege generally that the person holding the office or enjoying the franchise does so without lawful authority and in such case as against the State it devolves upon such persons to show a complete legal right to enjoy the privileges in question." [State ex rel. Union Electric Light and Power Co. v. Grimm, supra.] We are of the opinion, however, that, under the issues made by the pleading in this case, it was only necessary for respondent Barbieri to show that no qualified successor had been elected and qualified, and this burden he assumed at the opening of the hearing before the commissioner.

Considering now the issues as between relator and respondent Wiley. Did the plea as to the respondent Barbieri's disqualifications, set up in respondent Wiley's answer, raise a proper issue for our consideration; either as between the respondents or between relator and either respondent? "The primary and fundamental question in a proceeding by quo warranto, is whether the defendant is legally entitled to hold the office, and not as to the rights of any other person who may claim it. Where the information is upon the relation of one who himself claims to have been elected, his rights may incidentally have to be determined, but not where the proceeding is instituted by the State." [State ex rel. Attorney General v. Towns-

ley, 56 Mo. 107, 113.] If respondent Barbieri cannot hold the office for any cause, it does not follow, under the facts here, that respondent Wiley is legally entitled to the office. [State ex rel. Circuit Attorney v. McCann, 81 Mo. 479, 480.] The facts pleaded with reference to respondent Barbieri did not tend to show any right in respondent Wiley with reference to said office.

The respondent in a quo warranto proceeding, brought to test the right to an office, is required to set forth the facts which constitute his own title and specifically state by what right he claims the office. He is not called upon to show that some other person is disqualified and particularly if such facts are not necessarily involved in the determination of the issue with reference to his own right to hold the office as between himself and the relator. The absence of right in another claiming the office is of no consequences, unless such fact serves to qualify, explain or justify the right of respondent. [Greening, States Attorney, ex rel. Rowe v. Barnes, 355 Ill. 99, 188 N. E. 805, 806; The People ex rel. Falkenbury v. Miles, 2 Mich. 348, 349; Lake et al. v. State of Florida ex rel. Palmer, 18 Fla. 501, 506.] "The sole issue in proceedings of this nature, instituted to test the right of an incumbent to an office or franchise, being as to the right of the respondent, he cannot controvert the right or title of the person alleged in the information to be entitled to the office, nor can the court adjudicate upon such right, unless it is necessarily involved in the determination of the issue between the people and the respondent." [High, Extraordinary Legal Remedies (3 Ed.), p. 668, sec. 712.] This court has repeatedly held that such a plea in the answer of a respondent is subject to demurrer and, unless germane to the issues, does not tend to support respondent's right to the office. [State ex rel. Attorney General v. Seay, 64 Mo. 89, 96; State ex rel. Circuit Attorney v. McCann, supra; State ex rel. Attorney General v. Vail, 53 Mo. 97, 104, 121.] Any lack of right of respondent Barbieri to the office did not tend to sustain respondent Wiley's claim, but, if respondent Wiley is disqualified, respondent Barbieri is entitled to hold the office. The fact that a single information was filed against both respondents does not change the rule that the issues are still between relator and the respective respondents and each is called upon to show his own title to the office. [State ex rel. Nagle, Atty. Gen., v. Stafford, 97 Mont. 275, 282, 284, 34 Pac. (2d) 372.]

Did the charges against respondent Barbieri in respondent Wiley's answer tend to broaden the issues as between relator and respondent Barbieri? These charges against respondent Barbieri were not preferred by the State. They were not filed by the Attorney General. [Sec. 1782, R. S. 1939, Mo. Stat. Ann., sec. 1618, p. 1767.] No leave was granted by this court for the filing of an information at the relation of respondent Wiley or at the relation of any individual. [State ex rel. Boyd v. Rose, 84 Mo. 198, 202; State ex rel. Prosecuting

Attorney, Greene County, v. Heffernan, 243 Mo. 442, 451, 148 S. W. 90.] The charges made against respondent Barbieri were in direct conflict with the facts stated in the information and with the allegation that he "is . . . entitled to continue to hold the office . . . until a duly qualified successor is elected, commissioned and qualified." Respondent Barbieri did not attempt to plead to the charges made against him by his co-respondent, nor did relator attempt to enlarge the issues made by the pleadings. Objection was promptly made by respondent Barbieri to the evidence of respondent Wiley with respect to said charges.

Respondent Wiley contends that "the matter of inquiring into Barbieri's qualifications is res adjudicata" since relator's motion to strike the said charges from his answer was overruled by this court. The motion was in effect a special demurrer directed to a portion of respondent Wiley's answer, it was overruled. Assuming the order was sufficient to bar the refiling of the same or another such motion by the relator (State ex rel. Mueller Furnace Co. v. Buckner, 207 Mo. App. 48, 229 S. W. 392, 393), it was not binding upon ▮▮▮ this court in the further consideration of the cause. [Rolleg v. Lofton (Mo. App.), 230 S. W. 330.]. It did not create issues which did not exist. It could not authorize the introduction of evidence which did not tend to support respondent Wiley's claim to the office, nor tend to support or refute some issue as between relator and respondent Barbieri. Respondent Barbieri could not be required to prove, as against relator, facts alleged and conceded by the relator. We hold that there was no issue between relator and respondent Barbieri with respect to said charges (made by respondent Wiley) and, in this proceeding there could be no issue thereon as between the respondents. [See, also, Masonic Home of Missouri v. Windsor, 338 Mo. 877, 92 S. W. (2d) 713, 717; Missouri District Telegraph Co. v. Southwestern Bell Telephone Co., 336 Mo. 453, 79 S. W. (2d) 257, 260.]. Respondent Barbieri was not required to establish his right to the office as against said charges. The only controverted issue of fact between respondent Barbieri and relator was the issue as to the election of a qualified successor.

▮▮ As between relator and respondent Wiley, the pleadings presented the issue of the respondent Wiley's right to the said office, but, in view of the admissions made at the hearing, the only question in dispute was the sufficiency of his residence in DeKalb County. The burden of establishing this issue rested upon him. The question, therefore, of respondent Wiley's residence is decisive as to both respondents. Respondent Wiley supported the affirmative of this issue and respondent Barbieri the negative. Each had the burden of proof as against relator.

▮▮ Respondent Wiley contends the commissioner erred in admitting certain testimony over his objection that it did not tend

to prove or disprove any issue in the case. The evidence referred to is (1) an exhibit showing payment by respondent Wiley of bar enrollment fees in Clinton County on January 19, 1940; (2) an exhibit showing respondent paid his bar enrollment fees in DeKalb County January 16, 1941; (3) an affidavit filed with the County Clerk of Johnson County on December 6, 1938, under the Corrupt Practice Act, supra, and particularly Sec. 11790, R. S. 1939; (4) a Notary Public's commission issued to him in Clinton County; (5) instruments showing that he took acknowledgments as such Notary Public in Clinton County at various times before and after his removal to DeKalb County; and (6) evidence concerning the visit of his brother-in-law to the Clinton County home on May 4, 1940.

"Even though the reception of evidence were error it would not require the recommittal of the case to the commissioner since we are at liberty to disregard any evidence which we consider incompetent and since we are not bound by the commissioner's findings." [State on inf. McKittrick, Atty. Gen., v. Graves, 346 Mo. 990, 144 S. W. (2d) 91, 94.] We think the evidence objected to was competent and properly admitted. Although Rule 37 of this court requires the payment of bar fees to the Circuit Clerk of the county "wherein the lawyer maintains an office," the fact that such fees were paid successively in Johnson County, Clinton County and DeKalb County could be considered along with the other competent evidence in the record in determining where respondent resided during the year immediately preceding the general election of 1940. The affidavit filed under the Corrupt Practice Act in Johnson County on December 6, 1938, was certainly an admission that respondent had made the race for a public office in Johnson County and it was of some value as an admission that he resided in such county at that time. With reference to the Notary Public's commission and performance of duties thereunder, although Sec. 13360, R. S. 1939, does not expressly require residence in the county, still in view of Sec. 13363, R. S. 1939, and the fact that respondent was living with his family in Clinton County at the time the commission was issued and some of the acknowledgments taken, and in view of the fact that there was no evidence that respondent maintained an office apart from his home, we think the evidence admissible and that it could be considered along with the other evidence in determining the question of respondent's residence. The evidence concerning the brother-in-law's visit was also competent. It showed location in Clinton County on said date and that the issue of residence was raised prior to respondent's move in June, 1940. It is unnecessary to comment on the particular value of any portion of this evidence.

■ Respondent Wiley further contends the Commissioner erred in excluding competent, relevant and material evidence offered by him to prove residence in DeKalb ■ County. Briefly, the evi-

dence refused related to respondent's intentions at the time he left Cameron in 1936, his conversations with his wife at said time with reference to future plans, his intention at the time he left Warrensburg in 1938, his purpose and intention in visiting the Smith home in December, 1938, his conversations and inquiries in an effort to secure a location in DeKalb County thereafter, his intention to remain only temporarily in Clinton County when he moved in his own house in 1938, and other similar evidence. This evidence was excluded by the Commissioner upon the theory that respondent Wiley's own testimony conclusively showed that he had never resided in DeKalb County, during the period covered by the offerings, so that, what respondent intended to do in the future, was incompetent in view of the fact that he never actually resided in said county during said period. We think the evidence was properly excluded since mere intention to acquire a new residence or domicile could avail nothing without an actual removal to the new residence or proposed location. [19 C. J. 423, Sec. 51, 28 C. J. S. 32, Sec. 13.] Mere future plans not carried into execution would not tend to show that residence was acquired. There must be not only bodily presence in the county or place but there must be a presently exercised intention of establishing residence. See authorities hereinafter referred to.

Was respondent Wiley a bona fide resident of DeKalb County for the twelve months immediately preceding the general election held on November 5, 1940? "The question (of residence) is one of fact which is often difficult to determine." In re Ozias' Estate (Mo. App.), 29 S. W. (2d) 240, 243; Trigg v. Trigg, 226 Mo. App. 284, 41 S. W. (2d) 583, 589; Dist. of Columbia v. Murphy, 62 Sup. Ct. 303, decided December 15, 1941. In the latter case Justice JACKSON mentioned some of the many matters relevant to the determination of such an issue. Our only statute dealing with this question appears to be Sec. 655, R. S. 1939, Mo. Stat. Ann., Sec. 655, p. 4899. It provides that "the place where the family of any person shall permanently reside in this State, and the place where any person having no family shall generally lodge, shall be deemed the place of residence of such person or persons respectively." The evidence here does not bring our inquiry within the terms of this statute.

We have set out, supra, the evidence relied upon by respondent Wiley to establish residence in DeKalb County for the required time and by respondent Barbieri to show that no qualified successor had been elected. It is unnecessary to review this evidence again. We think it fails to show any physical act of staying, abiding or residing in DeKalb County, prior to June, 1940, with the present intention, then and there, to remain and to establish residence in said county. At no time prior to the date mentioned did respondent declare himself to be a resident of said county or by any word or act indicate a present intention to acquire residence in said county, or that resi-

dence had been acquired. The mere fact of storing some household goods in that county with an intention to acquire residence therein at some future time, an intention which we think the record clearly shows was subsequently abandoned, was wholly insufficient. The desire of respondent to locate in DeKalb County, and his efforts to secure a location therein, was, under the facts in evidence, wholly insufficient to show a present intention accompanied by action evidencing such intent to acquire residence in said county as of the date of such efforts. We think the evidence in the record fails to show that respondent was ever, at any time prior to June, 1940, located in De-Kalb County or was present therein with the present intention to remain and establish residence. Respondent relies upon Scovill v. Glasner, 79 Mo. 449, 460; Lankford v. Gebhart, 130 Mo. 621, 633, 32 S. W. 1127; State ex rel. Kelly v. Shepherd, 218 Mo. 656, 666, 117 S. W. 1169; In re Lankford's Estate, 272 Mo. 1, 197 S. W. 147, 148; Nolker v. Nolker (Mo. Sup.), 257 S. W. 798, 802; In re Ozias' Estate, supra; Trigg v. Trigg, supra; Northern v. McCaw, 189 Mo. App. 362, 175 S. W. 317, 319; Finley v. Finley (Mo. App.), 6 S. W. (2d) 1006, 1007; and certain other authorities. Respondent insists that, in view of his physical presence on visits into DeKalb County, his intention to establish residence controls. We think the evidence shows no more than a future intention to locate in DeKalb County, and that such intention was unaccompanied by any present acts or conduct evidencing a present intent to establish residence. In the Lankford case, supra, the court said: "The physical act of staying must be accompanied with the mental determination of making a home or domicile in the place where the party stays or abides." In the In re Lankford case, supra, the court said: "Residence is largely a matter of intention. . . . This intention is to be deduced from the acts and utterances of the person whose residence is in issue." In the Trigg case, supra, the court said that, "residence is largely a matter of intention evidenced by some act or acts in conformity with such intention." In none of the cases relied upon does the court indicate that intention, separate and apart from actual presence, to-wit, staying or abiding, controls. On the other hand the authorities indicate that, when one claims to have established a new residence, there must be a concurrence of physical acts evidencing such intent, such as physical presence or actual habitation in the place claimed as the place of residence, and the present intention evidenced by conduct or utterances there to remain indefinitely, or for a fixed time and then and there to establish residence.

 We hold that respondent Wiley was not a bona fide resident of DeKalb County for twelve months immediately preceding the general election held on November 5, 1940. He, therefore, did not possess requisite qualifications to be elected and hold the office of Prosecuting Attorney of said county by virtue of said election and he has no

legal right to said office against the inquiry of the State in this proceeding. The findings of the commissioner with reference to respondent Wiley are approved and it is ordered that respondent Max R. Wiley be ousted from the office of Prosecuting Attorney of DeKalb County as of January 2, 1941, and for the usurpation of said office a fine in the sum of $1.00 is assessed and the costs of this action are taxed against him.

With reference to respondent Barbieri, we cannot overlook the admission that the actual fact is that at the time he took office he may have been subject to exactly the same disqualification as was respondent Wiley when he undertook to take office; nor may we overlook the evidence from which an inference might be drawn that respondent Barbieri failed to comply with Section 12941, R. S. 1939.

When it appears from the record that a party has a valid right, claim or cause of action and that because of available evidence further proceedings are necessary to do justice, this court has discretion to remand the case for the purpose of allowing an amendment in accordance with the facts disclosed and a retrial on the correct theory applicable to the facts. [Hetzler v. Millard, 348 Mo. 198, 153 S. W. (2d) 355; Jensen v. Wilson Township, 346 Mo. 1199, 145 S. W. (2d) 373, and cases cited; Byrne v. Prudential Ins. Co. (Mo. Sup.), 88 S. W. (2d) 344.] Certainly this principle should be applied, in a matter of public interest and importance, in an original proceeding in this court; especially when otherwise the result might be to allow one, who is not entitled thereto, to receive pay from public funds. The proceeding against respondent William M. Barbieri is continued with leave to relator to amend the information as to him in accordance with the admitted facts and the evidence appearing in the record and for further proceedings in the event the amendment is made. If the amendment is not made within 30 days from this date, the proceeding as to respondent Barbieri will be dismissed without prejudice. *Hyde* and *Bradley, CC.,* concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.